[No. 19995.  *En Banc.*  November 16, 1926.]

CORA HEPNER, *Respondent*, v. DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant*.[1]

[1] PLEADING (101)—AMENDMENT—LEAVE TO AMEND—DISCRETION OF
COURT.  It is not an abuse of discretion in a jury trial to refuse
leave to the state to amend an answer admitting an injury to
plaintiff so as to deny the same, where it introduced a new issue
that would have required a continuance (FULLERTON, J., dis-
senting).

[2] MASTER AND SERVANT (122-1)—REMEDIES UNDER WORKMEN'S COM-
PENSATION ACT—EVIDENCE—SUFFICIENCY.  In an action for com-
pensation under the industrial insurance act, whether plaintiff's
insanity was caused by an injury to his knee is a question for
the jury, where two physicians testified that the injury caused
fluid to form in the knee whereby toxin was released in the
blood which would have the effect of inducing insanity.

[3] DEATH (25)—EVIDENCE—CAUSE OF DEATH—SUFFICIENCY.  That
decedent met his death while walking on railroad tracks while
in an insane condition is sufficiently established by proof that,
while his mind was in an insane condition, on a dark and rainy
night, he suddenly left the house and his body was found five
minutes later fifty feet away, where he had been struck by a
train.

Appeal from a judgment of the superior court for
Mason county, Wright, J., entered January 27, 1926,
upon the verdict of the jury in favor of the plaintiff, on
appeal from a decision of the department of labor and
industries rejecting a claim for compensation under
the workmen's compensation law.  Affirmed.

*The Attorney General, M. H. Wight, Assistant,* and
*Chas. R. Lewis,* for appellant.

*Marion Garland,* for respondent.

ASKREN, J.—Respondent is the surviving widow of
Charles Hepner, deceased, who was killed in November,
1924.  Prior to his death he had been working for the

¹Reported in 250 Pac. 461.

Peninsula Railway Company. While so employed, he became incapacitated for work on account of trouble with his knee, and at the time of his death was struck by a railroad train, death following instantly.

Respondent filed a claim with the department of labor and industries, which was rejected, and appeal was taken to the superior court. The complaint, briefly stated, alleged the following facts:

That on the 14th day of August, 1924, while working for his employer, the decedent received an injury to his knee, which progressed until he was compelled to quit work; that application was made to the department of labor and industries for loss of time resulting from the injury, the compensation being regularly paid; that his knee became worse, resulting in his insanity, and that while in that condition he walked into a moving train and was killed.

Appellant department filed an answer, in which it admitted that on the 4th day of August, 1924, while working for the railway company, decedent sustained an injury to his knee which compelled him to quit work for a short time; that application for compensation had been made, which was duly allowed and paid; and denied the other allegations, and set up certain affirmative defenses.

The cause came on for trial before a jury, the first witness being respondent. At the conclusion of her testimony, the *Attorney General* asked leave to amend the pleadings filed by the department so that, instead of admitting an injury on August 4, 1924, it would deny that any injury had been received. The *Attorney General* stated to the court that the department had been in error in admitting that an injury had been received as alleged in the complaint, and desired to contest the issue. The court refused any amendment, and the trial proceeded to its close, the jury returning a

verdict in favor of respondent. Thereupon appellant moved for a new trial, which was refused, and judgment was entered against the department.

[1] The first error urged upon appeal is that the court erred in not permitting an amendment to the pleadings. The rule is well settled, that an amendment to the pleadings during the progress of the trial of a case is a matter within the court's discretion. Especially is this true in a jury trial. In the instant case, appellant desired to amend the pleadings for the purpose of raising an issue upon the question of whether or not an injury had been sustained. No issue upon this point having been joined by the pleadings, respondent probably would have been unable to proceed, if the amendment had been permitted. The result would have been a continuance. It appears that the reason appellant desired to amend was because it thought the respondent had not offered sufficient evidence to show an injury within the meaning of the workmen's compensation act. But since an injury had been admitted, no evidence upon this point was necessary. Under the circumstances, we think the trial court properly exercised its discretion in refusing an amendment.

[2] Appellant insists, however, that there was not sufficient evidence to go to the jury upon the question of whether the injury complained of produced insanity, and as a result of which insanity decedent came to his death. We have carefully examined the evidence, and are content to say that we deem it sufficient to take the case to the jury. The evidence disclosed that the injury to the knee caused a fluid to form therein; that this fluid was withdrawn at times and then a bandage placed over the knee preventing the accumulation of the fluid. Two physicians testified that thereby toxin was released in the blood which would have the effect of pro-

ducing insanity.  There was no medical testimony in opposition thereto.  The jury, therefore, had a right to accept this evidence.

The evidence just detailed distinguishes this case from *Grime v. Fletcher* (1915), 1 K. B. 734, and *Withers v. London B. & S. C. R. Co.* (1916), 2 K. B. 772, where it was held that the insanity of the claimant was brought about by the consequences of the accident preying on his mind.  The distinction was pointed out in *Marriott v. Maltby Main Colliery Co.*, 90 L. J. (K. B.) 349, Weekly Notes (1921) 7, and we think the facts in this case come within the rule announced therein.

[3]  Appellant insists, however, that the question, as to how decedent met his death, was purely a matter of conjecture.  The evidence showed that decedent left his home at 6:30 P. M. on a dark, rainy night, without a coat, and without expressing a word as to his intentions.  His wife at the time thought that he had just stepped out upon the front porch, and was not alarmed by his absence.  His body was found, approximately five minutes later, near the railway track fifty feet away, where he had been struck by a train  There was some evidence that decedent had at different times walked along this track, and that on the day of his death his wife had asked him to pile some bark lying along the right-of-way; that her purpose in asking him to pile the bark was to keep him employed, with the hope that exercise would benefit his condition, but that he refused to do this.  The complaint alleged that decedent, in an insane condition, wandered upon the track and was killed.  The jury so found by their verdict. Appellant now urges that it was just as reasonable to suppose that decedent went walking for exercise, or went to pile the bark, and, being negligent and unmindful of the dangers, was struck by the train; or that, in

the alternative, he may have committed suicide.  But all those suggestions leave out of consideration the important fact, fully established by the evidence, that at the time in question the decedent's mind was in an insane condition.  There was testimony showing that the decedent did not want to go to a hospital, because he thought the nurses and doctors were trying to do away with him; that he was inclined to hide when visitors came to the house; that he thought his friends were down on him; that he would not go out doors, unless some one went along; that he would follow his wife around like a child, and had to be treated like a child.  The evidence was all but conclusive that decedent was insane; and, from the testimony given by medical experts, it was shown that his state of mind was that of a child.  If his mind was in the condition shown by the evidence, it is, of course, apparent that he could not commit suicide, as that term is usually used to indicate the action of a person who is able to weigh and appreciate the thing about to be done; or, as was said in *Case of Sponatski,* 220 Mass. 526, 108 N. E. 466, L. R. A. 1916A 333:

" . . . a voluntary wilful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act . . ."

Nor was there any evidence in the record to indicate that decedent was walking upon the track for exercise, or that he went there for the purpose of piling bark.

We think that all the circumstances shown by the evidence cannot reasonably support any other hypothesis than that the decedent met his death through wandering upon the railroad track, while in an insane condition; and that, therefore, the verdict of the jury is not based upon conjecture.

We find no error in the record, and the judgment is affirmed.

TOLMAN, C. J., HOLCOMB, PARKER, MITCHELL, MAIN, MACKINTOSH, and BRIDGES, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. I think the trial court was in error in refusing to grant the appellant leave to amend its pleadings, and that this court is in error in affirming its ruling in that respect.

There is some reason for refusing to allow an ordinary litigant, who, from the nature of things, should know the merits of the controversy before he enters upon a trial thereof, to introduce a new element of controversy during the course of the trial; yet an examination of our cases will show that our rule is liberal, even in such a situation. But, in my opinion, the rule should not be applied in controversies of this sort. The department of labor and industries is not an ordinary litigant. It is the administrator of a trust fund; a fund contributed by the industries of the state for the purpose of compensating workmen injured in the industries, and this, without regard to the question whether the injury was the result of fault of the workman or fault of the employer. The work of administering the fund has reached vast proportions. Huge sums are collected and disbursed annually. The claimants are many, and the claims vary in size from the minimum to the maximum allowed by the law. It is not strange, therefore, that the officers of the state administering the fund will occasionally make a mistake, and will recognize at one stage of the proceedings the validity of a claim which further inquiry shall prove unfounded. When it does find, before the case is finally closed, that it has made a mistake in recognizing the validity of a

claim, no mere rule of procedure should, in my opinion, prevent a correction of the mistake.

Another reason is that the industries contributing to the fund must trust entirely to the state officers for its due administration. While they are the sufferers from its mal-administration, they have no voice, at least no more than a persuasive voice, in its administration. Justice to them requires that no one be permitted to share in the fund who is not justly entitled to share therein. For the court to allow a claimant not justly entitled to share in the fund to share therein, because of the mistake of the officers administering the fund, regardless of the merits of the claim, is, I think, to work a wrong on the contributors to the fund; it is to visit upon the innocent a fault chargeable to the state.

I think, furthermore, that the very act creating the fund requires a ruling contrary to that announced by the majority. It will be remembered that the department administering the fund refused to allow the claim of the claimant, and that the proceeding in the superior court was a proceeding to review the order of the department. The section of the act permitting such a review, (Laws of 1911, p. 368, § 20) [Rem. Comp. Stat., § 7697] while providing that the proceedings in review shall be informal and summary, expressly provides that "full opportunity to be heard shall be had before judgment is pronounced." This quoted clause applies to the department as well as to the claimant, and, in my opinion, permits it to show that its conclusion is right, notwithstanding in so doing it controverts an asserted fact necessary to a recovery which it had theretofore conceded to be correct.

I think there should be a new trial, in which the department should be permitted to introduce any evidence it has tending to show that the claimant has no just

claim against the fund. On the merits of the claim, I express no opinion.