[No. 29306. Department One. August 2, 1945.]

CHESTER ZINIEWICZ, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 161 P. (2d) 315.

*The Attorney General* and *Harry L. Parr, Assistant,* for appellant Department of Labor and Industries.

*L. B. Donley,* for appellant Polson Logging Company.

*F. W. Loomis,* for respondent.

MILLARD, J.—This appeal is prosecuted by the department of labor and industries and the employer from a judgment on the verdict in favor of plaintiff, in an action to recover against industrial insurance fund for permanent disability of entire left leg alleged to have been sustained as the result of fracture of left ankle while employed by Polson Logging Company in extrahazardous industry. Appellants assign as errors denial of motion for dismissal of the action at the conclusion of respondent's case and denial of motion for judgment notwithstanding the verdict.

Counsel for appellants argue that the testimony of Drs. Fitz and Lind, who examined respondent out of court solely for the purpose of testifying and not for the purpose of treat-

ment of respondent, was not admissible to sustain the claim of respondent as to his actual condition; and that, with this evidence. eliminated, the presumption of *prima facie* correctness of the department's decision (from which respondent appealed to the superior court) persists. It is further argued that the only competent evidence adduced by respondent as to his condition was the testimony of Dr. Watkins, respondent's attending physician, that respondent's disability was fifty per cent of amputation value of the leg below the knee, which evidence does not even tend to sustain respondent's theory of recovery for permanent disability of entire left leg.

If we correctly understand the theory of appellants, it is that only a question of law, not one of fact, was presented in the case at bar. Appellants insist, in estimating the compensation to which the injured workman may be entitled, upon restriction to the situs of the trauma—limitation to leg below the knee and ankle—and argue that consideration should not be given to incapacity of leg above the knee resulting from injury to the ankle or to any portion of the leg below the knee.

The statute (Rem. Rev. Stat., § 7679) makes provision for payment of specific amounts for specified disabilities as listed in the compensation schedule. The compensation for loss by amputation of one leg so near the hip that an artificial limb cannot be worn is three thousand dollars. If one leg is amputated at or above the knee so that an artificial limb can be worn, the compensation is $2,280. Compensation for loss by amputation of one leg below the knee is $1,560. The statute then provides that compensation for permanent partial disabilities not specified (respondent is in that class) shall be in the proportion which the extent of such disability shall bear to that specified in the compensation schedule. The pertinent portion of the statute reads as follows:

"Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed the sum

of two thousand four hundred dollars ($2,400.00): . . . provided, further, That for disability to a member not involving amputation, not more than three-fourths (¾) of the foregoing respective specified sums shall be paid. . . ."

Unless the court could say, as a matter of law, that there was neither evidence nor reasonable inference from evidence sufficient to sustain verdict in favor of respondent, the two motions of appellants should have been denied. We have stated repeatedly that the evidence must be viewed in the light most favorable to party against whom such motions are made, and where there is substantial competent evidence supporting the verdict, the verdict must stand. The evidence is summarized as follows:

While in the employ of appellant employer in an extra-hazardous occupation, respondent fell from a flat car December 4, 1940, as a result of which accident he fractured the lower part of his left leg. The injury is described as a long spiral oblique fracture of the lower middle third of the tibia and a fracture of the fibula at the junction of the mid and lower thirds. The surgeon's three attempts at reduction were unsuccessful. On advice of the surgeon, resort was had to open reduction, which necessitated the use of three screws. Respondent was not able to resume work until April 7, 1941. Time loss was paid April 10, 1941, to period ending April 6, 1941. In September, 1941, respondent returned to the hospital for another operation and was unable to work until November 3, 1941, when he returned to his former employer, but he was not able to perform any of the jobs available. He is unable to perform any work where he has to be constantly on his feet. His trade, or calling, is that of a crane driver, and it is necessary, as he often has to take other jobs, to be active on his feet.

Permanent partial disability allowance of $390 was paid to claimant January 22, 1942. Hearing was had June 9, 1942, before an examiner on claimant's application to joint board March 27, 1942, for rehearing; wherein he sought further compensation and benefits, including further permanent partial disability.

Dr. Jules H. Fitz, who had practiced medicine in Grays Harbor county continuously for thirty-eight years, during which period he had had considerable practice in connection with industrial insurance cases, testified in behalf of the claimant. His testimony was that he had examined the departmental files in the case of the claimant and the X rays relating to the claim, and had also examined the claimant, who complained of pain in his left leg and back and that the injury was disabling his entire left leg. Dr. Fitz testified further that the complaints of respondent were the natural and probable results of such an injury as respondent had sustained; that he did not think respondent could follow any occupation where he had to be on his feet very much or be very active, and that he thought the injury was such that it was disabling respondent's entire left leg. This expert witness testified that the injury compelled respondent to walk in such a way that his back was affected. The doctor's conclusions were based on what respondent told him, on what he found in the departmental files, and from his experience with similar fractures.

Following his testimony that respondent's injury was disabling the entire left leg, this expert witness was asked, considering one hundred per cent as normal, to estimate the percentage of disability of the affected left leg sustained by claimant on account of his injury, to which the witness replied that he would consider the disability to be neither more nor less than seventy-five per cent of normal. Dr. Fitz further testified that he found swelling in the foot and ankle and flabbiness in the left leg, which denoted weakness which he thought was a progressive condition, and that claimant had no weight-bearing ability in his toes; that respondent cannot walk without limping; that the side-to-side movement of the ankle was practically nothing and the up-and-down movement not much better.

On cross-examination, he testified that his examination of respondent a few days prior to the trial disclosed that respondent had a fracture of both bones above the ankle; that his measurement of the claimant's legs disclosed that the injured leg was two inches smaller than the uninjured

leg at the thigh and at the calf. Dr. Fitz did not rely merely upon statements of respondent. He examined the file of the department and the X rays, and also made a very careful and personal examination of the body of the respondent.

Respondent's testimony relative to the accident was quite extensive. He testified he had pain in his back and on up to the left leg; that at times his leg gave way without warning; that he could not make full use of the toes on his injured foot; that he returned to work but was unable to perform the duties demanded of him, and later he worked as a crane operator at another mill, after working temporarily as a lumber piler.

Two other witnesses testified that they were acquainted with respondent, and that he limped and does not now get around like a normal person. Respondent's wife testified to the same effect. Dr. Alton H. Lind, a licensed chiropodist engaged in the treatment of arches and feet conditions called as a witness on behalf of respondent, testified that he had examined respondent, the file of the department, and the X rays; that the left ankle was badly swollen and that the X rays disclosed a backward bending of the tibia. His testimony is corroborative of that of Dr. Fitz. He testified positively that the pains resulting from the injury are such as to be disabling to the entire left leg; that considering one hundred per cent normal the percentage of disability sustained by claimant on account of his injury was about sixty-five per cent; that respondent has more disability than he would have if his leg were amputated and he were fitted with a good artificial limb.

The testimony of the two doctors sustained the theory of respondent that his entire left leg is disabled as a result of the above-described injury to his ankle. Dr. Watkins testified that July 2, 1942, with Dr. Goodnow, he examined respondent and read his case history. He estimated the disability of respondent at fifty per cent as compared to amputation of the leg below the knee.

December 11, 1942, respondent's claim was reopened, and he was paid an additional partial disability allowance of $390, making a total permanent partial disability allowance

of $780, which is the allowance for permanent partial disability of fifty per cent as compared to amputation below the knee.

Respondent appealed to the superior court. Trial of the cause to the court, sitting with a jury, resulted in verdict that respondent was entitled to compensation equivalent to the loss of his left leg at a point above the knee, but not so close to the hip that an artificial limb could not be worn. Judgment was entered awarding respondent $1,710 (three fourths of compensation for loss by amputation of one leg at or above the knee so that an artificial limb can be worn), which, minus $780 respondent had received as compensation for his injury, the department was directed to pay. The department and employer appealed.

■ The testimony of Drs. Fitz and Lind was admissible. The argument that the two experts did not compare respondent's disability with any specified disability, therefore their testimony has no probative value, is without merit. While the two witnesses did not use the language of the statute, their language is plain. It would not, we stated in *Gavin v. Everton,* 19 Wn. (2d) 785, 144 P. (2d) 735, be a salutary rule to require a witness to couch his testimony in the phraseology of our opinions. Nor would it be a salutary rule to require witnesses to use the language of the statute. In *Campbell v. Department of Labor & Industries,* 21 Wn. (2d) 553, 152 P. (2d) 312, we held an interrogatory "to what extent, if any, has the plaintiff sustained a permanent partial disability to his leg?" was sufficiently specific. In that case, the answer was fifty per cent. We held that any question as to disability covered by the interrogatory was foreclosed by the verdict of the jury, as there was ample evidence to sustain the finding that respondent sustained a permanent partial disability of fifty per cent to his leg.

One's leg extends from the place where the ball of the femur fits into the socket of the hip to the ankle of the foot. Respondent's two expert witnesses testified fully concerning the nature and location and cause of respondent's disability. Their estimate of disability was a comparison of respondent's disability with amputation at the hip. Dr. Fitz testified

that respondent's injuries were such that they disabled respondent's entire left leg; that, considering one hundred per cent normal, the percentage of disability to the affected member was seventy-five per cent of normal. This witness described in detail how the ankle, calf, knee, and thigh were affected by the injury to the ankle. Dr. Lind's testimony was to the same effect. He further testified that he was of the opinion that respondent's disability was greater than it would be if his leg were amputated and if he had a good artificial limb.

■ Whether the injury to the ankle caused permanent partial incapacity of the leg below the knee or above the knee, was a question of fact. Under the statute (Rem. Rev. Stat., § 7679), an injured employee is entitled to determination of his compensation according to the percentage which the disability sustained bears to that specified disability which it most closely resembles and approximates in degree of disability. We have frequently held that, in cases of the character of the case at bar, the question as to the extent of the injury sustained is one of fact. *Smith v. Department of Labor & Industries,* 180 Wash. 84, 38 P. (2d) 1016; *Johnston v. Department of Labor & Industries,* 163 Wash. 549, 2 P. (2d) 67.

■ The statute (Rem. Rev. Stat., § 7679) provides that each workman who shall be injured in the course of his employment shall receive compensation therefor out of the accident fund in accordance with the compensation schedule. The statute defines "injury" as a sudden and tangible happening of a traumatic nature and such physical condition as results therefrom. See *McCormick Lbr. Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807, in which we reviewed the authorities involving a consideration of the meaning of the word "accident," which supports the contention of respondent that the statute (Rem. Rev. Stat., § 7679), which provides that

" . . . compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability shall bear to that above specified, which

most closely resembles and approximates in degree of disability such other disability," contemplates compensation not for the wound but for the disability resultant from the injury.

In *Henson v. Department of Labor & Industries*, 15 Wn. (2d) 384, 130 P. (2d) 885, we held that:

"Disability means the impairment of the workmen's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life. It connotes a loss of earning power."

■ If a workman sustains an injury to his foot or to his arm, and as a result of such injury other parts of his body are affected, the injured workman would be entitled to compensation for the total extent of his disability. *Litke v. Department of Labor & Industries*, 2 Wn. (2d) 536, 98 P. (2d) 981; 71 C. J. 838.

In *Hepner v. Department of Labor & Industries*, 141 Wash. 55, 250 Pac. 461, the workman received an injury to his knee which progressed until he was compelled to quit work. Compensation was regularly paid by the department on the claimant's application for loss of time resulting from the injury. Aggravation of the injury to his knee resulted in insanity, as a result of which the workman walked into a moving train and was killed. We held that the death was due to the original injury and that the widow was entitled to her pension. See, also, *Miller v. Department of Labor & Industries*, 200 Wash. 674, 94 P. (2d) 764.

■ The experts called as witnesses for respondent testified that respondent's disability extended to his entire leg, as was evidenced by the pain, flabbiness, weakness, and atrophy in the entire leg both above and below the knee. All of these symptoms were due to the condition at the site of the fracture.

The allowance of compensation equivalent to the loss of his left leg at a point above the knee, but not so close to the hip that an artificial limb could not be worn, was well within the overwhelming weight of credible evidence as to

the extent of respondent's injury. The trial court did not err in denying the two motions of appellants.

Appellants complain of submission to the jury of instructions Nos. 1 and 12. By instruction No. 1, the jury was informed that, at the time respondent sustained his injury, the workmen's compensation statute included a schedule of compensation for certain specified disabilities, which, so far as pertinent in the case at bar, provided that an injured workman should receive for loss by amputation of one leg so near the hip that an artificial limb could not be worn, three thousand dollars; and for loss by amputation of one leg below the knee, $1,560. The jury was instructed that respondent claimed to be entitled to greater compensation than that allowed him by the department upon two grounds: First, the percentage of disability should be computed as compared with the loss of an entire leg; and second, that, in any event, he is entitled to a higher percentage of disability than that allowed him by the department. Appellants excepted to this instruction on the ground that that portion of the statute which provides compensation of three thousand dollars for loss by amputation of one leg so near the hip that an artificial limb cannot be worn, was not applicable to any issue in the cause.

By instruction No. 12, the jury was charged that there was no evidence that the claimant had suffered an injury which would entitle him to compensation equivalent to the loss of a leg so near the hip that an artificial limb could not be worn; that the jury should determine whether respondent was entitled to compensation providing for the loss of the leg at a point below the knee or above the knee which would not prevent the use of an artificial leg. With this instruction, two interrogatories were submitted to the jury, one to apply in case the jury found respondent entitled to compensation equivalent to the loss of the leg below the knee and one for the loss of the leg above the knee. The first interrogatory reads:

"We, the Jury, find that the injury suffered by the claimant entitles him to compensation equivalent to the loss of his left leg at a point below the knee."

Interrogatory No. 2 reads as follows:

"We, the Jury, find that the injury suffered by the claimant entitles him to compensation equivalent to the loss of his left leg at a point above the knee, but not so close to the hip that an artificial limb could not be worn."

The jury adopted interrogatory No. 2.

Appellants excepted to this instruction on the grounds that the court submitted to the jury a pure question of law, and that, the injury having actually occurred below the knee, it was erroneous as to any question of injury above the knee, it clearly appearing that the permanent partial disability suffered most closely resembles and approximates the degree of disability below the knee and above the ankle.

■ The error of instruction No. 1, in so far as it quotes that portion of the statute respecting compensation of three thousand dollars for loss by amputation of one leg so near the hip that an artificial limb cannot be worn, was in effect deleted by that part of instruction No. 12 that there was no evidence to submit to the jury that respondent had suffered an injury that would entitle him to compensation equivalent to the loss of a leg so near the hip that an artificial limb could not be worn. The jury was specifically advised to disregard any reference to the loss of a leg so near the hip that an artificial limb could not be worn, and under the interrogatories submitted it was impossible for the jury to consider such an injury. The error was not prejudicial, in view of the court's instruction to the jury to disregard any reference to the loss of a leg so near the hip that an artificial limb could not be worn. There is ample evidence to sustain the verdict that respondent suffered an injury which entitled him to compensation equivalent to the loss of his left leg at a point above the knee, but not so close to the hip that an artificial limb could not be worn.

■ Error is next assigned on refusal of the trial court to instruct the jury that the word "amputation" means a complete severance of a part or portion of the human body; that "the word percentage as used in these instructions

means a proportion based upon one hundred percent as being a complete amputation of a member at a certain point." It is argued that it was the duty of the jury to determine the amount of damage in terms of percentage to respondent's left leg as compared with complete amputation of the left leg at a point above the ankle and below the knee. It is insisted that the jury should have been charged that, as the evidence was undisputed that no part or portion of the leg itself was actually amputated, the jury could not allow for the damage to the left leg any amount greater than seventy-five per cent of the compensation allowed for amputation of the left leg at the knee.

It was not error to refuse to give the requested instruction, as it limited the consideration of the jury to a comparison of respondent's actual injury with amputation of the leg below the knee only, regardless of the full extent of the injury or the parts of the leg disabled by injury to the ankle, as to which there is ample credible evidence.

Our examination of the record fails to disclose any reversible error, therefore the judgment is affirmed.

BEALS, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.