[No. 29884.    Department One.    September 6, 1946.]

WILLIAM A. McCOY, *as Administrator, Appellant,* v. DALE
COURTNEY *et al., Respondents.*[1]

[1]Reported in 172 P. (2d) 596.

*McMicken, Rupp & Schweppe* and *Elliott & Martin,* for appellant.

*John D. MacGillivray,* for respondents.

STEINERT, J.—Plaintiff, as administrator of his wife's estate, brought suit to recover damages for the death of his wife, who, upon alighting from defendants' automobile, had been struck down and run over by the vehicle as it rolled backwards down a public street. Defendants denied any negligence on their part and pleaded affirmatively contributory negligence on the part of the deceased; this, in turn, was denied by the plaintiff in his reply. The cause came on for trial before the court, sitting with a jury. At the conclusion of plaintiff's evidence, the court sustained defendants' challenge to its legal sufficiency and granted their motion for involuntary nonsuit. From a judgment dismissing the action, plaintiff appealed.

The unfortunate accident occurred about ten o'clock in the evening of October 17, 1944, on Times street, in the city of Bremerton. Appellant, William A. McCoy, was the husband of Helen McCoy, the decedent, who, at the time of her death, was of the age of thirty-seven years. Respondents, Dale Courtney and Irene Courtney, husband and wife, were the owners of a 1940 Mercury sedan which they admittedly maintained as a family car.

Paragraph five of the complaint describes the occurrence of the accident as follows:

"That on the 17th day of October, 1944, at about 10:00 o'clock P. M., the said defendant [respondent] Irene Courtney, *while acting in her capacity as a member of said marital community of Dale Courtney and Irene Courtney,* requested the said Helen McCoy to drive her, in the 1940 Mercury Sedan hereinbefore described, from the Courtney residence in Bremerton to the business district of the City of Bremerton; that the said Helen McCoy, solely as an accommodation to said defendants [respondents], agreed to and did drive said Irene Courtney in accordance with said request; that upon returning to the defendants' residence, the said Helen McCoy parked said vehicle on Times Avenue, a public street in front of the Courtney home in Bremerton, *set the hand brake on said car,* and alighted therefrom; that immediately after the said Helen McCoy alighted from said vehicle *the brake failed to hold said car* and it started to roll downhill backwards; that the said Helen McCoy attempted to stop said vehicle *by pulling upon said hand brake, but was unable to do so;* that said car knocked the said Helen McCoy to the street, ran over her, and inflicted internal injuries which resulted in her death on October 19, 1944; *that as to repair and maintenance, and efficiency of operation, said 1940 Mercury Sedan, and particularly the entire brake system thereon, was under the exclusive control of the defendants and each of them.*" (Italics ours.)

In their answer, respondents admitted all of these allegations of the complaint except those which we have italicized.

Appellant in his complaint further alleged that the respondents were negligent in allowing the brake lining of their automobile to become so badly worn as to cause the hand brake to become inadequate and unsafe; maintaining, and requesting Helen McCoy to drive, an automobile with

a deceptive and unsafe hand brake, in that it would feel and appear to a driver to be set and effective, when in fact it would not prevent the car from rolling; furnishing to Helen McCoy, to use and operate, a dangerous instrumentality having defects, as hereinbefore related, which were latent and concealed; and failing to advise Helen McCoy that the brake was unsafe. Respondents specifically denied all of these allegations, and in their affirmative defense alleged that the injuries received by the decedent were proximately caused by her failing to secure effectively the automobile at the time of stopping and parking it on a perceptible grade.

Respondents produced no evidence in their own behalf but made a motion for an involuntary nonsuit, which was granted. The facts are therefore to be determined from appellant's evidence and the reasonable inferences flowing therefrom.

For some time prior to the accident, the McCoys and the Courtneys had been next-door neighbors and were close friends. Their homes face in front on Ford street in Bremerton, and to the rear on Times street. The McCoy home is immediately south of the house occupied by the Courtneys.

Times street is an ordinary graveled roadway. Opposite the McCoy home the street is almost level, while opposite the Courtney home it slopes slightly downward toward the north, the degree of the decline increasing in that direction to such an extent that immediately north of the Courtney property the grade is quite steep. The crest of the hill is about opposite the back gate of the Courtney property. Entrances to the garages on both properties are from Times street.

Each of the families owned an automobile, and appellant McCoy, who is the local manager of the telephone company, also operated a company car, which he kept in the double garage on his premises. As means of entrance and exit, both families used Times street more frequently than Ford street, and it was their custom to park their cars on that street opposite the rear of their respective homes.

Mr. Courtney used his car for both business and pleasure purposes. Mrs. Courtney did not drive the car, did not know

how to operate it, and knew nothing about its operation, equipment, or condition. The decedent, Mrs. McCoy, was an experienced driver, having operated automobiles since she was fifteen years of age.

At the time of the accident, Mr. Courtney was, and for about a week or ten days prior thereto had been, in Idaho on a hunting trip, but had left his car and the keys thereto at home.

On the night of October 17th, about nine-thirty o'clock, while Mr. and Mrs. McCoy were visiting a neighbor, Mrs. Courtney called by telephone and requested Mrs. McCoy to take her, in the Courtney car, on an errand in the business district of Bremerton. Mrs. McCoy acceded to the request and, accompanied by Mrs. Courtney, drove the car from the Courtney residence to the point of objective and back again. Mr. McCoy remained at the neighbor's house for a few minutes and then went back to his home.

Upon her return from the errand with Mrs. Courtney, Mrs. McCoy parked the car on Times street back of the Courtney residence. Almost immediately after she had stepped out of the car, it began to roll backwards, in a northerly direction, down the slope of the hill. She attempted to stop the car, in some manner not made entirely clear in the record, and in her attempt was knocked down and run over, suffering injuries which two days later resulted in her death.

In the excitement of the event, Mrs. Courtney screamed, and Mr. McCoy, hearing her, ran from his residence to where Mrs. Courtney was standing. She told him that "Helen," Mrs. McCoy, had been run over. He then ran further down the hill calling to his wife and endeavoring to locate her in the darkness. She answered his call and thus he was able to find her, lying in the roadway. While lying prone upon the ground, she exclaimed: "Bill, the car ran over me. The brake slipped." He then carried her into the house, summoned an ambulance, and had her taken to the hospital.

About an hour and a half later, Mr. McCoy returned from the hospital and then went to locate the runaway car, in-

tending to drive it back up the hill to the place where it was customarily parked. He found that the car had crossed the road and rolled down the hill a distance of seventy-five feet, where it had stopped in a clump of bushes, beside a telephone pole. The car was out of gear at that time and the brake was "half-way on," that is, the lever was half-way back. He drove the car up the hill and parked it back of the McCoy residence at a point where the ground was level. There, he left the car in gear, with the brake pulled all the way back, and in that condition the vehicle remained stationary overnight.

One of the principal issues in the case concerned the condition of the hand brake of the Courtney car at the time of the accident. Mr. McCoy testified that some two months prior thereto, while the two families were at the Courtney summer home on Hood Canal, he and Mr. Courtney had used the car in an endeavor to tow a disabled automobile belonging to Mr. Courtney's son-in-law; that on that occasion, while operating the Courtney car up a hill, he found that whenever it stopped, even though the hand brake was put on, the vehicle would start to roll backwards unless it was put in low gear. He also testified that after the accident he made several tests of the car and found that it required some effort to pull the brake lever half-way back, and considerably more effort to pull it all the way back; also that when the lever was pulled half-way back the brake would not hold the car on the decline.

In January, 1945, about three months after the accident, the car was tested at a brake service station in Seattle, and it was found that when the brake was applied, it seemed to have a little braking power, but when the right rear wheel was taken off it was discovered that the brake lining and drums were badly worn.

The service man testified that

" . . . the brake lining was badly worn and the drums were worn, also, and the hand brake lever was pulled up against the rear axle housing and so it wouldn't make any difference how hard the hand brake was pulled up on the

wheels, you could turn the wheels, still. That is what I found."

He further testified that it would be unsafe to park a car with the brake in that condition.

"Q. Do you have any doubt if the brakes had been in good shape, whether they would have held that car on those grades? A. No, no doubt but if it had been in good shape, it would have held. Q. I will ask whether or not it would hold the car? A. If it was in safe condition, there would be no point in putting it in gear to make it hold. . . . Q. If he parked it there and it was not in gear, your testimony is, it would roll back? A. It would roll back if the brake was in the same condition I found it when I examined it."

Other evidence tended to prove that the car was in virtually the same condition at the time the test was made as it was at the time of the accident.

Mr. Courtney, called by the appellant and examined as an adverse witness, testified that he had never had any difficulty with the brakes, and that in his experience the car had never rolled backwards. He admitted, however, that in parking the car he always put it in appropriate gear, according to the grade of the road, and that he never gave any particular attention to the brakes. He testified: "To tell you the truth I didn't pay any attention to the brakes before the accident." He was not present at the time of the accident and did not learn of it for several days afterwards.

Mrs. McCoy, the decedent, had driven the Courtney car several times before, but there is nothing in the evidence to indicate that she had any knowledge of the condition of the brakes.

The question before us is whether the evidence submitted by the appellant was sufficient to make a *prima facie* case of negligence as against a motion for nonsuit. A *"prima facie* case" is one where the evidence is sufficient to justify, but not to compel, an inference of liability, or, in other words, evidence to be weighed, but not necessarily to be accepted, by a jury or other trier of the fact. *Vance v. Guy,* 224 N. C. 607, 31 S. E. (2d) 766.

■ The ultimate burden in this case was, of course, upon the appellant plaintiff to prove that respondents were negligent in the performance of some duty owing to the deceased, for the essential elements of actionable negligence are (1) the existence of a duty, (2) a breach thereof, and (3) a resulting injury. *Christensen v. Weyerhaeuser Timber Co.,* 16 Wn. (2d) 424, 133 P. (2d) 797. In his case in chief, however, appellant was required only to make a *prima facie* showing of these three necessary elements.

■ A rule to be remembered in this connection is that a challenge by a defendant to the sufficiency of the evidence of the plaintiff, or a motion for nonsuit, admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant. *Weinman v. Puget Sound Power & Light Co.,* 175 Wash. 73, 26 P. (2d) 395; *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022.

With these rules in mind, we inquire into the showing made by the appellant with reference to the three elements referred to above.

Rem. Rev. Stat., Vol. 7A, § 6360-34 [P.P.C. § 286-1], provides:

"Every motor vehicle, other than a motorcycle, when operated upon a public highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying such brakes, each of which means shall be effective to apply the brakes to at least two wheels. . . .

"The means of applying the brakes other than the service or foot brake shall be capable of holding any motor vehicle or combination of vehicles stationary upon any plus or minus grade upon which the same is to be operated and in any event upon a plus or minus grade of at least five (5) per cent."

Rem. Rev. Stat., Vol. 7A, § 6360-109 [P.P.C. § 295-69], provides:

"No person operating or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, and when standing upon a perceptible grade without

effectively setting the brake thereon and turning the front wheels to the curb or side of the roadway."

■■ Under the first of these statutes, it was the positive duty of the respondents to have their automobile equipped with brakes capable of holding the vehicle on any plus or minus grade upon which it was to be operated, and a violation of that statute would constitute negligence *per se*. *Jacklin v. North Coast Transp. Co.*, 165 Wash. 236, 5 P. (2d) 325. Under the second of these statutes, the operator of the motor vehicle, when leaving it standing and unattended upon a perceptible grade, was required to set the brake effectively and turn the front wheel against the curb or side of the roadway, and violation of that statute would likewise constitute negligence *per se*. The statute does not require the operator, under such circumstances, to put the car in gear, nor does such precaution meet the requirements of the statute.

■ The uncontradicted evidence in this case is ample to make at least a *prima facie* showing that the hand brake did not comply with the requirements of the statute but was wholly ineffective. The evidence tends to show, also, that Mrs. McCoy did set the hand brake to the point where it appeared sufficient to hold the car, and the inference is strong that the car did remain stationary long enough to permit the two occupants to alight from it. However, under the evidence adduced, it would not have mattered how far back she had pulled the brake lever; the defective condition of the brake would have produced the same result. Until she learned, or in the exercise of reasonable care should have learned, the contrary, Mrs. McCoy had the right to assume that the brake was in the condition required by the statute.

■ Moreover, there being no evidence to the contrary, the presumption arises that the deceased, Mrs. McCoy, was at the time of the accident exercising due care. *Eaton v. Hewitt*, 171 Wash. 260, 17 P. (2d) 906; *Smith v. Seattle*, 172 Wash. 66, 19 P. (2d) 652; *Reinhart v. Oregon-Washington R. & N. Co.*, 174 Wash. 320, 24 P. (2d) 615; *Morris v. Chicago,*

*M. St. P. & Pac. R. Co.,* 1 Wn. (2d) 587, 97 P. (2d) 119, 100 P. (2d) 19. The rule and the reason therefor are clearly expressed in the *Morris* case, *supra,* as follows:

"We think the rule is based primarily upon the fact that there is no evidence to show what the deceased did or did not do immediately preceding the accident; and so, where an action is brought for damages resulting from such death, in order that the action may go forward, in the first instance, to that stage of the proceedings where it can be presented to a court or jury, the law indulges in a conclusion which presumably is based upon human experience, that the deceased must be presumed to have used due care."

■ Respondents make the contention that, even though the brakes may have been defective, they had no knowledge or notice of such defect. There was evidence tending to prove that the brakes had been in a defective condition for a period of at least several months prior to the event here involved. There was also the statement by Mr. Courtney that he paid no attention to the brakes prior to the happening of the accident. He seems to have contented himself usually with putting the car in appropriate gear when parking it. So far as the record before us discloses, he never made any test of his brakes or had any inspection of them made to determine whether they were in proper working order. He had ample time and opportunity to learn whether the brakes would hold the car when parked in the vicinity of his residence where there was a perceptible grade. He also knew that, if the car were used by his wife while he was absent in Idaho, it would have to be driven by someone other than himself, and he must be held to have known that such person would rely upon the adequacy of the brakes.

■ A reading of the record convinces us that the evidence of the appellant, when considered in the light most favorable to him, was sufficient to make a *prima facie* case of actionable negligence against the respondents, in that they owed to the deceased the duty to maintain adequate brakes upon the car when requesting her to use it for their accommodation; that they breached that duty; and that as a result thereof the deceased sustained the injuries culmi-

nating in her death. Whether the deceased was herself guilty of negligence contributing to her injuries, upon the occasion in question, was a matter to be affirmatively shown by the respondents. The evidence adduced does not establish such fact as a matter of law.

The judgment is reversed, with direction to the trial court to grant a new trial.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.