[No. 29943. Department One. March 7, 1947.]

O. V. HYMAN, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*Griffin, Gershon & Stark,* for appellant.

*The Attorney General, Russell M. Lindel* and *J. Anton Sterbick, Jr., Assistants,* for respondent.

ABEL, J.—Plaintiff filed a claim with the department of labor and industries as a result of a piece of wire being accidentally thrust into his left eye, which resulted in industrial blindness of that eye. The claim was closed by

[1]Reported in 178 P. (2d) 347.

the supervisor after medical and hospital treatment had been furnished and the department had awarded one hundred per cent for loss of vision of the left eye. Plaintiff was dissatisfied and filed before the joint board of the department an application for rehearing and reopening, contending that, in addition to the loss of the sight of the left eye, he *had suffered unspecified permanent partial disability*. After hearing, the joint board sustained the action of the supervisor in denying to the plaintiff unspecified permanent partial disability in addition to the specific allowance for loss of vision of the left eye.

Plaintiff appealed to the superior court of Pierce county, where a jury was impaneled to try the issue. All the evidence offered by plaintiff before the joint board which had been stenographically transcribed was introduced as evidence. At the conclusion of plaintiff's evidence, defendant moved to dismiss the case and challenged the sufficiency of plaintiff's evidence, which motion was granted by the trial court. Plaintiff's motion for a new trial was denied, and judgment entered dismissing the action.

The evidence offered by plaintiff was his own testimony that a piece of wire about the size of the lead in a lead pencil pierced the eyeball of his left eye, and that as a result he completely lost vision in the left eye. He has pain in both eyes, tearing in his left eye, his vision blurs, the glare of lights bothers him, the right eye tires easily, seems to him to be under a strain, and pain goes from one eye to the other. He testified he was a highly trained welder, earning $1.60½ per hour, but can never follow that occupation again; that he is now employed as a stalk picker at ninety-eight cents per hour; that he never had any of these troubles before the accident, but they all developed therefrom.

Tony Fuchs testified as a witness for plaintiff and stated that he had known plaintiff for some time, had had occasion to observe him; in fact, he is foreman on the job and supervised his work. His testimony is in part as follows:

"Q. What else have you noticed about him? A. I noticed he would strain himself and his eye would get red and he would complain about headaches. Q. Did you notice whether sunlight or light had any effect on him? A. Yes. It seemed to. If there was anything glaring, you could see him kind of pulling his head off to the side."

Dr. A. R. Miller, a duly and legally licensed physician and surgeon, practising medicine in the state of Washington, was called as a witness, testified regarding his qualifications as a physician, then stated that he had made one physical examination of plaintiff. It is difficult to separate the subjective testimony of Dr. Miller from his objective testimony. The pertinent parts of his testimony concerning the physical condition of plaintiff are as follows:

"A. History; Loss of left eye vision in accident. June 8th, 1943. Working for the Sound Construction Company when a piece of tie line struck the eye. . . . A. Has pain in the right eye when it gets tired. Since the blindness has occurred, he has not been able to do his own type of work; namely, welding. Feels he is losing considerable income by not being able to do it. . . . A. (Continuing) Coughs quite a bit with expectoration, mostly at night. Excess nasal discharge—no—reading causes reddening of the left eye; also has symptoms of glaring and blurring. Mr. Sterbick: At this time, Mr. Cummins, trial examiner, stated: 'Glaring and blurring of what? Glaring and blurring of which eye?' The Witness: Of the good eye, the right eye. . . . Q. Your examination? A. Examination: Vision: left eye: count fingers at one foot. Right eye, 20/25 plus three. Refraction. O. D., right eye minus 25, minus 15 at 1/15 equals 20/20. Left eye, iris is fixed. There is a cut in the iris at 3 o'clock with adhesions present in pupil. Pupil has been deformed by the cut at apex of the pupil toward 3 o'clock. Scar formation at the limbus at 3 o'clock. During examination, the conjunctiva in the left eye becomes quite injected. Right eye conjunctiva becomes slightly injected, but not quite so much as the left. . . . A. Left eye, pupil is fixed and does not react to light. Right eye, pupil reacted to light. Palpation to pressure is normal in both eyes. Fundus examination: Right eye, disc and vessels and retina are all without change. Lens and cornea clear. Left eye; Fundus cannot be seen through adhesions present in pupil. Conclusion:— Q. Yes,

what were your conclusions, Doctor, as to your diagnosis and percentage of disability suffered by the claimant? A. The patient has lost practically 100% of vision in the left eye due to the injury received in 1943. . . . A. This injury was such as to create a real possibility for a sympathetic ophthalmia. MR. CUMMINS: A real possibility for what? THE WITNESS: Sympathetic ophthalmia. Q. What is that? A. Sympathetic ophthalmia is a loss of the other eye by some unknown method of sympathizing disease of the uvea. This brings about the following symptoms: Constant subconscious worry regarding the possibility of losing the sight in the only good eye, symptoms of fatigue in this eye at the end of the day, redness of the left eye after reading, redness of the—yes, redness of the left eye after reading, headaches, glaring and blurring. MR. CUMMINS: Are we talking about the right eye now? THE WITNESS: I said redness of the left eye after reading. Headaches, glaring and blurring and loss of ability to hold down a more remunerative job. Q. What percentage of permanent partial disability do you feel the claimant has suf-' fered, Doctor? A. Because of the extreme possibility of losing the sight in the other eye by sympathetic ophthalmia, I feel that he has lost—that he has a permanent partial disability of an unspecified permanent partial disability of 50% at least. Q. Does that award, Doctor, include all his other symptoms, such as: Headaches, glaring and blurring and discomfort, reddening? . . . A. I would say that it included everything, . . . MR. CUMMINS: . . . Then, Doctor, will you tell us the relationship of the findings in the iris and the pupil and in the cornea to these other symptoms? . . . Q. To these other symptoms of which the patient complains, such as headaches, glaring, blurring, tearing? A. Well, they have a direct relationship. Q. Will you try to explain that more fully for us, Doctor? . . . A. The patient has a uveitis of the left eye sufficient to cause these symptoms. Q. What is a uveitis, Doctor? A. A uveitis can— MR. CUMMINS: What is it in this case? A. It is in this case the direct result of the injury. Q. What is a uveitis? What is the definition of uveitis? . . . A. It is a disease of the vessels and nerves of the chorioid. Q. Can you explain it in lay terminology? A. Chorioid is a layer of vessels and nerves underlying the retina. . . . Q. Without considering, Doctor, the possibility of sympathetic involvement of the right eye in this case, because if he does suffer a loss of vision in the right eye,

he can apply to reopen his case for aggravation and receive an award for such loss of vision, will you state what your opinion is with respect to the amount of permanent partial disability he has suffered and is entitled to for the other symptoms, and without taking into consideration the possibility of sympathetic involvement of the good eye? . . . Q. What is you opinion on that? A. I would think it would call for 33-⅓%. Q. That is 33-⅓% of the unspecified permanent partial disability? A. Yes. MR. GERSHON: I think that is all. BY MR. CUMMINS: Q. Well,— THE WITNESS: I say 33-⅓ because I mean approximately ⅓. Q. Now, you are talking about the right eye, are you, of that 33-⅓%, symptoms from the right eye, I mean, are you? I don't want the record confused. I am trying to find out what you mean. What is this 33-⅓% for? A. Unspecified permanent partial disability. Q. For what condition? A. The condition of constant subconscious worry regarding the possibility of losing the vision in the good eye, symptoms of the fatigue in the good eye at the end of the day, redness in the left eye after reading. Also headaches, glaring and blurring, and normally diminished—abnormally diminished income. . . . Q. Now, so far as his right eye is concerned, so far as it is concerned, from a vision standpoint I am talking about, and from the outward appearance of the eye when you saw him by checking the right eye, it was o.k., as you said, with reference to the retina and fundus and the cornea and all the major portions of that right eye and functioning things in the right eye, is that true? . . . A. Except that it does become injected. Q. What do you mean, injected? A. Reddened. Q. What? A. The conjunctiva becomes reddened during examination. Q. What did you think that was due to? A. Some sympathetic reddening. Q. You couldn't see any reason in the right eye, itself, to cause it? A. No, you can't. . . . Q. Do I misunderstand you, Doctor, or do you mean to testify that the award you are making, that you seek to make here is 33-⅓% of the unspecified if there is no developmental sympathetic ophthalmia in this case? Is that what you mean, for the total disability in this case? A. Yes."

Permanent partial disability is defined in Rem. Supp. 1941, § 7679 [P.P.C. § 705-1] (f) as follows:

"Permanent partial disability means the loss of either one foot, one leg, one hand, one arm, one eye, one or more

fingers, one or more toes, any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability. . . ."

■ The question before us is whether the evidence submitted by appellant was sufficient to make a *prima facie* case as against a motion for nonsuit. The legal principle is set out in *McCoy v. Courtney,* 25 Wn. (2d) 956, 172 P. (2d) 596, where it is stated on p. 895 as follows:

"A rule to be remembered in this connection is that a challenge by a defendant to the sufficiency of the evidence of the plaintiff, or a motion for nonsuit, admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant."

■ Stated in another way, the rule is set out in *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973, as follows:

"It is the firmly established rule that a motion for judgment notwithstanding the verdict involves no element of discretion and will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict."

■ Compensation for loss of vision is specifically provided by statute and has been paid by the department, but, if in addition to loss of vision, the accident caused unspecified permanent partial disability, then appellant is entitled to be awarded in this case for such additional permanent partial disability.

In *Ziniewicz v. Department of Labor & Industries,* 23 Wn. (2d) 436, 161 P. (2d) 315, speaking at p. 444, we stated:

"If a workman sustains an injury to his foot or to his arm, and as a result of such injury other parts of his body are affected, the injured workman would be entitled to compensation for the total extent of his disability. *Litke v. Department of Labor & Industries,* 2 Wn. (2d) 536, 98 P. (2d) 981; 71 C. J. 838.

"In *Hepner v. Department of Labor & Industries,* 141 Wash. 55, 250 Pac. 461, the workman received an injury

to his knee which progressed until he was compelled to quit work. Compensation was regularly paid by the department on the claimant's application for loss of time resulting from the injury. Aggravation of the injury to his knee resulted in insanity, as a result of which the workman walked into a moving train and was killed. We held that the death was due to the original injury and that the widow was entitled to her pension. See, also, *Miller v. Department of Labor & Industries,* 200 Wash. 674, 94 P. (2d) 764."

The department had allowed compensation for the loss of sight of the left eye. In addition to the testimony of the claimant and one lay witness, Dr. Miller testified that during his physical examination of the plaintiff, ". . . the conjunctiva in the left eye became quite injected. Right eye conjunctiva became slightly injected." The doctor further testified that, from the outward appearance of the right eye, it became injected, which meant reddened. This was objective testimony. The doctor further testified that uveitis and all the other conditions, such as : "his right eye tires upon reading," "he has an excess nasal discharge," "his right eye glares and blurs," "he has reddening of the left eye," "there is a cut in the iris and adhesions in the pupil of the left eye," and "the right eye conjunctiva becomes injected or reddened,"—all had a direct relationship to the injury and were in fact caused by the injury.

The doctor did not testify specifically that the injuries above described were permanent. However, he did testify that, by reason of these injuries and excluding the loss of sight of the left eye, that the plaintiff had "a permanent partial disability of an unspecified permanent partial disability of 50%." He later changed this to 33⅓ per cent when he eliminated the question of sympathetic ophthalmia. The assistant attorney general did not cross-examine the witness further on this subject. It is apparent that the doctor was testifying that the injuries referred to were a permanent partial disability. There could be no other reasonable inference from Dr. Miller's testimony.

Although a considerable part of the testimony is subjective, there is substantial medical testimony that is objective, and there is either direct evidence, or a reasonable inference from the evidence, that the plaintiff suffered a permanent partial disability other than the loss of sight of the left eye.

For the reason stated herein, the judgment is reversed and a new trial ordered.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.