**O. F. VEAL, Appellant,**

v.

**A. Blake DAVIS.**

Court of Appeals of Kentucky.

Nov. 4, 1960.

Rehearing Denied March 24, 1961.

Foster Ockerman, John R. Cook, Jr., Lexington, for appellant.

Rodman W. Keenon, Stoll, Keenon & Park, Lexington, for appellee.

MOREMEN, Judge.

Appellant Veal sought to recover damages for injuries received by him while he was a passenger in a car owned and operated by appellee Davis. The jury returned a verdict for Davis and from a judgment entered on it this appeal is prosecuted.

Davis, Veal and another passenger in the car, Spoonamore, worked for the L & N Railroad. On the morning of July 10, 1956, they left Lexington for the purpose of reporting for work at Hazard. This had been their practice for several years and appellee received mileage, under certain conditions, from the L & N Railroad for the use of his car. The accident occurred at about 10:20 a. m. The weather was clear and the high-way was dry. The course of travel was through rolling and hilly territory and, when on Ky. Highway 28, they approached its intersection with Ky. Highway 80, the terrain was such that the car was proceeding down a hill with various grades until it reached a point approximately 150 feet from the intersection where the grade is about 6% for 100 feet and the last 50 feet is almost level. A stop sign is located about 50 feet from the intersection on Highway 28 and a warning signal is located approximately 387 feet from the intersection which gives notice that a stop sign is ahead. When Davis was within a short distance of the stop sign he applied his brakes which failed to function with the result that he entered Highway 80 without stopping and with no lessening of speed and collided with a truck which was traveling on Highway 80. As a result of the impact the three men in the car were severely injured. It was shown that at the right of Highway 28 at the intersection there is a deep ravine; on the left is a high embankment and immediately beyond Highway 80 lies the Kentucky River. When Davis discovered that he had no brakes he attempted to cut to the left to avoid collision with the truck, but failed in this attempt.

Appellant complains that the trial court erred in refusing to give an instruction which he insists is authorized under KRS 189.090.

It might be best to discuss the instructions actually given by the court.

Instruction No. 1 reads as follows:

"It was the duty of the defendant, A. Blake Davis, in operating his car to exercise that degree of care that is usually exercised by ordinarily careful and prudent persons under the same or similar circumstances.

"To have his automobile under reasonable control.

"To keep a lookout ahead for other vehicles on the highway.

"It was the duty of the defendant at the time and on the occasion referred to in the testimony, and as he approached the place where the collision took place to operate it at a reasonable and proper rate of speed considering the traffic, use and condition of the highway at that time and place, and not exceeding 60·MPH; and it was his duty to exercise ordinary care to avoid colliding with other vehicles on the highway.

"As he approached Highway 80 on Highway 28, it was his further duty to bring his automobile to a dead stop before entering Highway 80 and not to proceed into Highway 80 until he could do so with reasonable safety to traffic on Highway 80.

"If the Jury believe from the evidence that the defendant failed to observe one or more of these duties, and that as a direct and proximate result of such failure (if any) the defendant's car collided with or struck the truck and thereby injured the plaintiff, then the law is for the plaintiff and you should so find. Unless you so believe, you will find for the defendant or you may find under other instructions herein."

Under the foregoing instruction the court placed a duty upon appellee to keep his car under reasonable control, to bring his automobile to a dead stop before entering Highway 80 and, among other things, not to proceed into it until he could do so with reasonable safety.

It was conceded by the appellee that his car was not under control at the time he entered the highway and that he failed to stop at the intersection. His defense was that his brakes had suddenly failed through no fault of his own.

There was ample evidence in the record that two days before the accident the car had been placed upon a rack and carefully checked by his sons, one of whom is a graduate mechanical engineer and the other one an employee of General Electric Company of Cincinnati, Ohio, in charge of writing a manual about jet engines. He too is a competent engineer. The brothers had thoroughly inspected the car and had found no indication of a leakage in the brake cylinder or the lines leading from it. Both witnesses testified that the sudden failure of brakes is caused by a broken line or by some foreign substance getting into the piston cup of the master cylinder with the result that the fluid is caused to bypass the cup and render the brakes suddenly ineffective. In addition it was shown that James Dudderar, according to a rather regular custom, had checked the car including the brakes on July 6, four days before the accident. He had raised the car on a rack, inspected its underside and checked the fluid in the braking cylinder. He found no leakage or other indication of a defect in the braking mechanism.

The defense of appellee was based on the contention that even though the car was not under control and he had violated some of the other duties delineated under Instruction No. 1 above, still he was excused because he had no knowledge of the defective condition of the brakes until he attempted to apply them at the scene of the accident.

Section (1) of KRS 189.090 reads:

"No owner shall knowingly operate or permit to be operated on a highway a motor vehicle upon which the brakes are defective."

This statute has been in effect since 1920, and, oddly enough, although several opinions touch upon the question it is generally assumed that if the operator has no notice of the defective condition of a brake and has exercised ordinary care in checking and maintaining the braking system he is excused from liability on account of the sudden failure of the brakes in an emergency. In other words, it has been assumed that the operator of an automobile is not an insurer of the mechanical perfection of its brakes.

But no case exactly in point has been found or cited to us. In some cases there was evidence that the operator knew or should have known of the brakes' imperfection and nevertheless the defendant contended a directed verdict should have been given. See Consolidated Coach Corporation v. Sphar, 226 Ky. 30, 10 S.W.2d 482.

In Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570, there was evidence that the brakes on Penick's truck were defective and Whitney had offered an instruction which stated that it was Penick's duty not to operate the vehicle with brakes that were defective. This court said that such an instruction should have been given because the jury was entitled to know it was Penick's duty not to drive his wrecker with defective brakes.

In Crawford v. Alexander, Ky., 259 S.W.2d 476, is an instruction, which now appears in Stanley's Instructions to Juries, § 121–A, that excused the defendant if the jury believed there was a sudden brake failure which was the proximate cause of the accident. However, in this case there was no discussion of the instruction given which received only tacit approval.

In any event, it is the opinion of the majority of this court that the above-quoted statute indicates that the operator of an automobile is not an insurer of the mechanical perfection of his brakes under all conditions. This was evidently the opinion of the trial court who gave this instruction:

"If the Jury believes from the evidence that prior to the time just before the accident, the brakes on the defendant's car had been in good order and working condition and that the defendant did not know, and could not, by the exercise of ordinary care, have known that said brakes would not work at the time and place of the accident, if said brakes did fail to work at said time and place, and such failure was the sole proximate cause of the acci-

dent, then the Jury will find for the defendant."

It will be remarked that the instruction required the jury to find that the brake failure was the "sole proximate cause" of the accident. In short, if appellee at the time was guilty of negligence, such as improper speed, the failure of the brake would be no excuse.

Appellant insists that an instruction in this case should contain information concerning the standards under the following subsections of KRS 189.090:

"(2) Every motor vehicle, other than a motor cycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold the vehicle. There shall be two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If the two separate means are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brake on at least two wheels.

"(3) (a) The service brakes upon any motor vehicle or combination of vehicles shall be adequate to stop the vehicle when traveling twenty miles per hour within a distance of thirty feet when upon dry asphalt or concrete pavement surface free from loose material where the grade does not exceed one percent.

"(b) Under the conditions described in subsection (3) (a) the hand brake shall be adequate to stop the vehicle within a distance of fifty-five feet and the hand brake shall be adequate to hold the vehicle stationary on any grade upon which it is operated.

"(c) Under the conditions described in subsection (3) (a) the service brakes upon a motor vehicle equipped with

two-wheel brakes only shall be adequate to stop the vehicle within a distance of forty feet and the hand brake adequate to stop the vehicle within a distance of fifty-five feet."

The foregoing subsections are set up standards for proper equipment for motor vehicles and are similar to sections of the same act which deal with other motor vehicle equipment, such as KRS 189.040, lights; 189.080, horns; 189.110, windshield wipers; 189.120, safety glass, among other special provisions of this nature.

We believe that under the evidence presented in this case the condition of the hand brake on the car, whether or not it conformed to the exact specifications of the statute, could not have been the proximate cause of this accident. It may be remembered that appellant was within 55 feet of the intersection when he applied the foot brake and he stated that he pumped the pedal several times under the impression that it might cause the brake to hold. This time consuming operation would have placed him at or in the intersection and the application of the hand brake, regardless of its efficiency, would have been ineffective to stop the vehicle in time to avoid the collision.

■ We believe it a matter of common knowledge that the ordinarily prudent operator of a vehicle relies upon service brakes to stop his car and in a sudden emergency caused by the abrupt failure of the brakes he should not be required to react perfectly. Similarly if the point at issue in the case was whether or not a headlight was out, it seems of little importance that such light, if burning, would be "of such intensity as to reveal persons and vehicles at least 350 feet ahead." Likewise, a braking system which is perfect in design is valueless when it fails to function.

The injection of the various standards outlined in the subsections above would have caused a false issue for the determi-

nation of the jury and the court was correct in refusing to give one.

■ Under the peculiar conditions of this case such an instruction certainly was not proper because appellant at most was an invitee passenger and the operator of a car owes a lesser duty to him than he does to other users of the highway.

In Helton v. Prater's Adm'r, 272 Ky. 574, 114 S.W.2d 1120, 1124, it was said:

"One who invites another to ride in his automobile is not bound to furnish a vehicle free from defects, and, unless he knows it is defective and therefore unsafe, he will not be liable for injuries received by the guest in an accident caused by a defect in the automobile and not by its negligent operation. Beard v. Klusmeier, 158 Ky. 153, 164 S.W. 319, 50 L.R.A.,N.S., 1100, Ann.Cas.1915D, 342. Under the facts in this case, the court, in substance, should have instructed the jury to find for the defendant if they believed from all the evidence that the accident resulted from some defect in the truck, causing one of the wheels to lock and the truck to turn over, if they further believed from the evidence that such defect, if any, was unknown to the defendant. Schilling v. Heringer, 252 Ky. 624, 67 S.W.2d 979."

In Perry v. Krumpelman, 309 Ky. 745, 218 S.W.2d 963, 9 A.L.R.2d 1335, where the owner of an automobile had been in an accident in the morning and the panel on the right side of the door of his car was damaged but the latch seemed to work all right although the door was hard to open or close and a mechanic advised the owner that there was nothing wrong with the latch, and where later the door flew open and a passenger was injured, this court after reaffirming the rule as to invitees, held that a peremptory instruction should have been given for the car owner because there was nothing in the record to show that he reasonably could have an-

ticipated that the door would fly open. The rule seems to be general. See Annotation to McCoy v. Courtney, 25 Wash.2d 956, 172 P.2d 596, 170 A.L.R. 603.

In the case at bar appellant had ridden in this car at various times for several years. He knew the type car in which he was riding and generally knew of its condition. The proof is satisfactory and we believe conclusive that appellee had no knowledge of a defect in his car, if any existed, before the time the fluid line broke. The trial court properly refused instructions concerning equipment.

Judgment affirmed.