[No. 29102. Department Two. May 15, 1944.]

CLARA ROELLICH, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1] Reported in 148 P. (2d) 957.

*The Attorney General* and *L. E. O'Neill, Assistant,* for appellant Department of Labor and Industries.

*T. J. Hanify, W. E. Heidinger,* and *Lester Huntington,* for appellant Weyerhaeuser Timber Co.

*Griffin & Gershon (J. A. Kavaney,* of counsel), for respondent.

ROBINSON, J.—On an appeal from an order of the joint board of the department, E. W. Roellich recovered, in the superior court of Clark county, on October 30, 1942, the following verdict:

"We, the jury in the above entitled cause, answer the following interrogatory, as follows:

"Has the disability of the plaintiff been aggravated after March 22, 1940 and before June 11, 1941, as a proximate result of the injury of December 27, 1939? Answer: 'Yes.'"

Both the department and the employer, Weyerhaeuser Timber Company, which participated, by counsel, in the hearings, both before the joint board and the superior court, moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. On November 17, 1942, Mr. Roellich died, and Mrs. Roellich, as his widow and, also, as the executrix of his estate, petitioned to be substituted as claimant. The petition to be substituted individually was granted, but substitution as executrix was denied, as were also the post-trial motions filed by the employer and the department, and, on February 9, 1943, judgment was entered remanding the case to the department for further proceedings in accordance with the verdict.

In due course, the employer, Weyerhaeuser Timber Company, filed notice of appeal. Subsequently, but within the

time prescribed by statute, the department also filed a notice of appeal, addressed to Mrs. Roellich and her attorneys and beginning as follows:

"You, and each of you, will please take notice that the above named defendant, department of labor and industries of the State of Washington, has joined in the appeal and does hereby join in the appeal of the Weyerhaeuser Timber Company, appealing to the Supreme Court of the State of Washington from the decree and judgment [designating and describing it]."

The respondent has moved to dismiss the appeal of the Weyerhaeuser Timber Company, on the ground that an employer has no right of appeal, and follows that motion with another to dismiss the appeal of the department. In connection with the second motion, it is said:

"It is the position of the respondent, that the above joinder in the Weyerhaeuser Timber Company appeal, is a nullity; it is like multiplying a given number by naught, the answer is still naught. In other words the department joined in something which does not exist, therefore there is no joinder."

This court has so repeatedly held, that, under similar circumstances, an employer has the right to appeal, that we feel warranted in denying the first motion without citation of authority. This ruling cuts the ground from under the second motion; at all events, the ground relied upon. We may say further that, even if we held the employer's appeal to be a nullity, we could not grant the motion to dismiss the department's appeal. Despite its somewhat unusual wording, it clearly notifies the respondent that the department is appealing to this court from the judgment of the superior court, and, therefore, adequately satisfies the purpose for which such notices are required.

At 2:15 p. m., on December 27, 1939, Roellich was clearing up at the foot of a sawmill stacker. This work consisted in picking up broken lumber and small sticks, sweeping up sawdust and other debris, and putting it in a box called a clean-up box. He testified:

"I was picking up or raking out rather under there . . . . that is, stacker 1, and a piece of wood hit me over

the back. Of course I had a pile of stuff on each side, so I don't know just exactly which piece it was. It kind of temporarily knocked the breath out of me."

The piece of wood or "sticker," as he called it, fell from the top of the stacker which he thought twenty or thirty feet high. There is no evidence whatever as to the size of the piece of wood which struck him. Roellich kept on working. He also worked the next day, December 28th. On that day, he injured his toe. On the 29th, he decided to consult a doctor about these injuries. The doctor, Dr. Harry M. Morgan, corroborates this, testifying as follows:

· "Q. Will you state, please, what complaints, if any, he made to you on that date and what findings, if any, you made at the same time? A. He came in complaining of having injured his toe. An X-ray was taken and a chip fracture of one of the toes was found. He also complained at that time of soreness in his back. He stated that he had been struck over the back by a falling board three or four days previously. The examination of his back showed nothing of any consequence. No tender areas, no irregularities of anything. Q. Was he complaining of any pain in the chest or anything of a like nature? A. No."

The mill shut down for four days. When it reopened on January 2nd, Roellich returned to work. On January 16th, while pushing the clean-up box or car loaded with small pieces of lumber and debris with which he had filled it, he "strained" himself.

"Well, when I strained myself there, it just felt like a gathering or something like that had bursted internally. . . . It felt like just behind my heart on toward the back that way."

·He managed to get home. A doctor was called, gave him a hypodermic, observed him for half an hour, called an ambulance, and sent him to a hospital where he remained until February 14, 1940. For a few days before this attack, he had been troubled with shortness of breath and pains in the chest, especially during the afternoon. The medical witnesses are in agreement that, on this occasion, he suffered a severe coronary thrombosis, a sure and certain mani-

festation of a preexisting and progressive disease of the heart.

It should be remembered throughout that the claim with which we are concerned in this action does not arise out of this heart attack of January 16, 1940. The claim with which we are here directly concerned is No. 937051, and covers the accident which occurred on December 27, 1939. The claim upon which this suit is founded was signed by Roellich when he was in the hospital after the heart attack and makes no reference to that attack. That the heart attack was not directly involved was conceded by the respondent's counsel when the employer's attorney objected to the admission of evidence concerning it. Respondent's counsel thereupon stated:

"MR. GERSHON: We are not claiming there was any injury on that date, if that will satisfy you. This claim is based on the injury that occurred December 27, 1939. But this is one of the facts we wish to bring out. In other words we want to point out to the Board all the facts that occurred ever since December 27, 1939."

It appears in the record that a separate claim was filed with respect to the heart attack of January 16th and given No. 946050, which was later rejected by the department. Apparently, the rejection was acquiesced in by Roellich, since he took no appeal from it. It is reasonably inferable that the rejection was made on the ground that no accident occurred on January 16, 1940; for, in June of that year, Roellich applied to The Equitable Life Assurance Society, under a group policy which expressly excluded industrial injuries from its coverage, for benefits on account of total disability. Answering the question on the blank, "Is present disability due to accident or injury?" Roellich said, "No." Roellich's signed application is supported by the statements of his attending physician and of his employer made on the same blank. His physician certified that he was taken sick on January 16, 1940, first treated that day, and first hospitalized that day. He filled in other parts of the blank as follows:

"What was the cause of the disability? Coronary Thrombosis.

"If due to accident, where and how did it occur? Not an injury.

"Has any industrial injury contributed to the disability? No.

"Give your diagnosis as finally decided. Coronary Thrombosis.

"How long was he physically unable to perform any and every duty of his occupation solely by reason of this sickness or injury described above? From January 16 to June 7, 1940, still disabled."

In the employer's statement, we find, among others the following question: "Is there possibility of Workmen's Compensation Liability in this case?" to which the employer, by its manager, answered "No."

The claim as to the accident of December 27, 1939, that is, No. 937051, the claim involved in this case, was closed by the department on March 22, 1940, without an award for time loss or a finding of permanent partial disability.

Except as to one question which, in view of the disposition we have concluded to make of this appeal, will not become material, the contentions of the appellant department and the appellant employer are substantially the same, and may be briefly indicated, as follows:

(1) The original claim with respect to the injury which occurred on December 27, 1939, was closed by an order of March 22, 1940, finding no permanent partial disability. From that order, no appeal was taken. Permanent partial disability has never been found. When this fact appeared (and it was conclusively shown), the trial court should have at once dismissed the action, for the statutory foundation for a claim of aggravation is altogether wanting. *State ex rel. Stone v. Olinger*, 6 Wn. (2d) 643, 108 P. (2d) 630. Furthermore, it is contended that no claim for aggravation can ever lie, since it is *res judicata* that there was no partial disability, the order of March 22, 1940, not having been appealed from and the time provided for appeal having expired.

(2) The claimant's own testimony showed that he was totally disabled by his heart affliction at all times after January 16, 1940, and, therefore, throughout the period from March 22, 1940, to June 11, 1941, and it is queried: How can the disability of one who is totally disabled be increased or aggravated?

(3) Finally, it is contended that there was not sufficient evidence to take the case to the jury, and that there is no substantial evidence in the record to sustain the verdict.

 A very limited question was put to the jury, and its findings may be accurately stated thus: Roellich's disability was aggravated after March 22, 1940, and before June 11, 1941, as a proximate result of the injury of December 27, 1939. As to the appellant's contention that there is no substantial evidence to that effect, the respondent's brief devotes less than a page. A broad, general question is quoted, to which her medical witness made a broad, general answer, and the matter is dismissed with this sentence:

"Since the enactment of the jury bill, giving jury verdicts the same force and effect in compensation cases as they have in other civil cases, a verdict must stand if there is any substantial evidence to support it."

We have repeatedly recognized and followed that rule. *Husa v. Department of Labor & Industries, ante* p. 114, 146 P. (2d) 191. We have also repeatedly recognized that the jury is the exclusive judge of the credibility of the witnesses. *Dupea v. Seattle, ante* p. 285, 147 P. (2d) 272. Nor can we set a verdict aside because we think it is not in accordance with substantial justice. Only the trial court can do that. *Bond v. Ovens, ante* p. 354, 147 P. (2d) 514. It follows that, in a jury case, the testimony of a single witness may, if the jury believe him, determine the result, although any number of witnesses may have testified to the contrary. With these things in mind, we proceed to a consideration of the third point raised by appellants.

 Passing, for the time being at least, the contention of the appellants that it is *res judicata* that no disability was suffered by Roellich as the result of the accident of De-

cember 27, 1939, the question before us is merely this: Is there substantial evidence that the disability of Roellich, caused by the accident of December 27, 1939, became aggravated after March 22, 1940, and before June 11, 1941? If there is such evidence, the verdict must be sustained, no matter how preponderant the evidence may be to the contrary, both as to quantity and quality.

The witnesses who gave testimony on behalf of the claimant were Roellich himself, F. S. Olson, and Dr. E. A. Rickards.

Mr. Roellich, testifying on October 8, 1941, was asked to describe his then condition in detail. He answered:

"Well, I am getting worser all the time. It seems like every time I go to work and try to walk a little bit I get short of breath and the pain in the chest is there all the time and I get dizzy spells."

There are several reasons, any one of which is sufficient, why this evidence cannot be relied on to support the verdict. It does not relate to his condition within the period involved. Furthermore, he testified he was substantially in that same condition just prior to his heart attack on January 16, 1940. At that time, his claim was still open. In any event, it is admitted by all the medical witnesses that one, whose heart affliction has progressed to the point where he has a nearly fatal coronary thrombosis, is bound from time to time thereafter to have shortness of breath and similar manifestations.

Again, it should be remembered that the claim sued upon is not based upon the heart attack. The claimant was asked if he could do as much work as he could do a year before, whereupon the examiner intervened, and the following occurred:

"Mr. Cummins: Mr. Gershon, the issue here is the difference between the time the claim was closed March 22, 1940, and June 11, 1941. How has his condition changed between the two periods? Mr. Gershon: When was the application filed? Mr. Cummins: June 11, 1941. Mr. Gershon: I got the dates mixed up, excuse me."

Thereupon, Roellich's counsel asked the direct and pertinent question: "Q. Could you do as much June 11, 1941 as in March, 1940?" To this question, Roellich made the following answer:

"A. Well, I don't exactly know because you see at the time I hadn't tried to do any work. I know I could do more walking around. I could stand more of that but I never got a thing I could do to test myself out. The Mrs. wouldn't never let me split any wood from the time I got home from the hospital until way late towards fall."

This is substantially equivalent to saying that he did not know whether his disability was aggravated during that period or not. Certainly, it did not warrant the jury in finding that it was. Nor do we find any other testimony of Mr. Roellich that tends to do so.

Mr. Olson merely testified that, sometime in March, 1941, Roellich became shortwinded after walking a few blocks. Considering his heart condition, that was to be expected, and the fact does not tend to support the verdict.

In view of the fact that, in discussing other features of the case, it has been indicated that there was very strong medical evidence produced on behalf of the department and employer, it is only fair to say that the single medical witness produced on behalf of the claimant, Dr. E. A. Rickards, appears to have had unusual qualifications. He graduated from the medical school of one of the great universities, remained there teaching anatomy and operative surgery for some time, has practiced medicine in this state since 1907, belongs to all the medical societies (American, state, county, and city), and had seen quite a few heart cases in connection with his work in surgery. He further testified that he had had occasion to rate and treat a large number of industrial insurance cases. That he had had a peculiarly wide experience in such cases is clear from other parts of the record. We quote a colloquy between an examiner for the joint board and claimant's counsel:

"Mr. Cummins: Now, Mr. Gershon, in order to eliminate some hearings that we have had recently in some other cases with reference to a report of the doctor's examinations

for you, will you stipulate in this record that the doctor has testified since January 1st, and between January 1st and October 15th, about on an average of twice a week before the Joint Board for examinations that he made at your request? MR. GERSHON: I will stipulate that is roughly correct, although within the last month or two I think it has been much less than that average. MR. CUMMINS: But, I mean, it was that average, would you not say—MR. GERSHON: I would say that is approximately correct, yes. MR. CUMMINS: And he received what, $10.00 for the examination and $25.00 for his appearing and testifying? MR. GERSHON: That is correct. MR. CUMMINS: All right."

that is to say, eighty examinations made, followed by testimony in eighty cases in nine and one-half months, for but one attorney or firm of attorneys. This, it must be conceded, indicates a wealth of experience in industrial insurance cases.

In this particular case, Dr. Rickards made his apparently customary single examination on April 17, 1941. Whatever may have been the fact as to the other seventy-nine cases, we are clear that more than one examination was necessary in order to give substantial testimony that the claimant's disability was aggravated during the period involved. Nor did the doctor specify what the nature of the aggravation was other than to say that the claimant was gradually growing weaker. Two examinations, at the very least, would have been necessary to testify to that from his own knowledge. That conclusion was based upon what the claimant told him. This was clearly demonstrated when claimant's counsel, near the close of his examination of Dr. Rickards, put to him the ultimate question which the jury was empaneled to answer:

"Q. Doctor, taking into consideration the history related to you and your examination, and from your examination, what is your opinion on the issue of aggravation in this case between the closing date of March 22, 1940, and his condition a year and approximately three months later on June 11, 1941? A. From his history of gradually growing weaker, which would be natural to expect, as I have stated, he is becoming gradually worse from his history of the case, that

is my opinion from this form of an injury, it does become worse. It certainly doesn't improve."

As we have already seen, the claimant himself, while on the stand on his own behalf, did not testify that he was growing weaker during that period.

■ It is unnecessary to further discuss Dr. Rickards' evidence, because we have very recently dealt with the exact situation here presented in a case as recently decided as April 11th. *Cooper v. Department of Labor & Industries,* *ante* p. 429, 147 P. (2d) 522. That case, like the instant case, was one in which the department had found no aggravation, and a jury had found otherwise. In reversing the judgment, we said, in part:

"The only medical testimony—it was admitted over objection of counsel for appellant—offered on behalf of respondent was that of a physician who only saw respondent once and that was March 29, 1942, when he examined respondent. That physician, solely on the basis of the statements of respondent respecting the pains he was undergoing, and that he was 'worse than he was when the claim was closed' in 1938, gave as his opinion that respondent's condition since the claim was closed had become aggravated.

"There is no evidence of even one objective symptom on which to base an opinion that, since respondent's claim was closed, his physical condition had become aggravated due to the injury for which he had already been compensated. Respondent's physician based his opinion as an expert upon subjective symptoms found, they being the things told him March 29, 1942, by respondent while being examined by the physician for the purpose of testifying as an expert witness. The examination was not for the purpose of treatment. Such things are none the less hearsay when they come from a physician than if from a layman. A physician may not base an opinion as to causation of a physical condition on subjective symptoms and self-serving statements."

All that is said in the foregoing quotation applies in this case, and, while more could be said, especially as to the question of proximate cause and as to the first and second contentions made by appellants, we think no more is necessary.

The judgment appealed from is reversed and the cause dismissed.

SIMPSON, C. J., MILLARD and MALLERY, JJ., concur.

BLAKE, J. (dissenting)—I dissent. It would seem that the majority put little faith in the testimony of Dr. Rickards. The jury, however, put much—at least enough to return a verdict for plaintiff. Since the jurors are the "sole and exclusive judges of the credibility of the witnesses and the weight of their testimony," I think the judgment entered on the verdict should be affirmed.

----

June 22, 1944. Petition for rehearing denied.

'Reported in 148 P. (2d) 951.