[No. 30197. Department Two. October 30, 1947.]

ROGER S. SPALDING, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1] Reported in 186 P. (2d) 76.

*The Attorney General* and *John F. Lindberg, Assistant,* for appellant.

*J. W. Graham,* for employer, Simpson Logging Company.

*F. W. Loomis,* for respondent.

JEFFERS, J.—Roger S. Spalding was injured on March 3, 1942, while in the employ of Simpson Logging Company. At the time of the injury, Mr. Spalding was setting chokers. A sapling about eighteen inches thick broke off when it was struck by a log, the top coming down and striking Mr. Spalding across the small of his back.

A claim for this injury was duly filed with the department of labor and industries, which claim was allowed, and claimant was paid fourteen months and five days time loss. The supervisor finally closed the claim, with a permanent partial disability award of twenty-five per cent as compared to the maximum for unspecified disability. From this decision, claimant appealed to the joint board for a rehearing. A rehearing was granted, after which hearing the joint board entered an order, dated April 30, 1945, sustaining the action of the supervisor. Claimant appealed from the order of the joint board to the superior court for Grays Harbor county.

The cause came on for hearing before the court and a jury on January 8, 1947, on the record as made before the joint board, and thereafter the jury returned a verdict in favor of claimant, in which, as appears from the judgment thereafter entered by the court, the jury found that claimant, as a proximate result of the accident occurring on March 3, 1942, had suffered permanent partial disability to the extent of "100% of $2,400." The judgment further provides:

"And it further appearing to the Court from the records and files of said Department in said matter that the said Department has paid the said claimant on his said claim for permanent partial disability, the sum of $600.00 and no more;

"Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED that the said matter be and herewith is referred to said Department of Labor and Industries which is directed to proceed accordingly and in accordance with the statutes in such cases made and provided; to reopen said claim and to allow and pay to the said claimant an additional award for permanent partial disability on account of his said injury in the sum of $1800.00."

By the judgment, claimant's attorney was awarded the sum of four hundred dollars.

Interrogatories were submitted to the jury, which, together with the answers thereto given by the jury, are as follows:

"1. Is the claimant, under the instructions of the Court and approximately growing out of his industrial accident, permanently and totally disabled?

"ANSWER: No.

"If your answer to the foregoing Interrogatory is in the affirmative of 'Yes,' then you need not answer the following Interrogatory; but if your answer is in the negative or 'No,' then you will answer the following Interrogatory.

"2. Do you find that the claimant has sustained a disability permanent but partial, greater than that for which he has already been allowed compensation?

"ANSWER: Yes.

"3. If your answer to No. 1 is 'No' and to Interrogatory No. 2 is 'Yes,' state the percentage of the claimant's disability as compared with the scheduled specified disability which it most closely resembles and approximates in degree of disability but not in any case to exceed the sum of $2400.00.

"100% of $2400.00."

These interrogatories and answers formed the basis for the judgment entered by the trial court.

The department filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which motions were denied.

The department has appealed from the judgment entered and has assigned as error: (1) the refusal of the court, on appellant's motion, to withdraw the cause from the jury and dismiss the appeal to the superior court; (2) the submission of the case to the jury; (3) the denial of appellant's motion for judgment n.o.v.; (4) the denial of appellant's motion for new trial; (5) the entry of judgment on the verdict; and (6) the award to respondent of judgment for an attorney's fee.

Appellant, in its brief, first discusses assignments Nos. 1 and 2. At the conclusion of the testimony, appellant made a motion requesting the court to withdraw the case from the consideration of the jury and dismiss the same, on the ground that there was not sufficient substantial evidence to warrant the submission of the case to a jury.

Appellant states that, in order for respondent to recover, there must be medical testimony to substantiate the claims made by respondent, and cites the following cases to sustain its contention:

*Cooper v. Department of Labor & Industries,* 195 Wash. 315, 80 P. (2d) 830. This case was tried to the court. The attending physician had diagnosed the case as influenzal bronchial pneumonia. We do not think the opinion in this case goes quite as far as the above statement of counsel for appellant implies. We did state:

"While the testimony of non-expert witnesses has some bearing upon the question involved [namely, whether the pneumonia was the result of the alleged injury or of a trauma], yet the actual facts in the *present situation* must be determined mostly from the testimony of the medical witnesses. *Stevich v. Department of Labor & Industries,* 182 Wash. 401, 47 P. (2d) 32, and cases cited." (Italics ours.)

*Weinheimer v. Department of Labor & Industries,* 8 Wn. (2d) 14, 111 P. (2d) 221. This case was also tried to the court. The opinion states:

"The medical evidence in support of the action of the joint board is unanimous. The only evidence opposed to the finding of the medical authorities that respondent is not permanently and totally disabled is the testimony of appellant as to his condition."

The opinion then continues:

"In cases of this kind, the actual facts must be determined from the testimony of the medical witnesses."

In the instant case, the testimony of four doctors was considered by the joint board. Drs. Kenneth Partlow and George A. LeCompte were called by claimant; and Drs. W. E. Steele and H. J. Wyckoff by the department. Drs. Partlow, Steele, and Wyckoff all concluded that claimant's condition was fixed; that no further treatment was indicated; and that claimant had a resulting permanent partial disability of twenty-five per cent as compared with the maximum for the unspecified injury.

It is upon the testimony of Dr. LeCompte and the non-expert witnesses that claimant bases his contention that the

evidence was sufficient to take this case to the jury, and a sufficient basis for the verdict returned by the jury. Appellant contends that Dr. LeCompte's testimony was based solely upon claimant's subjective complaints, and it therefore has little, if any, probative value, citing *Cooper v. Department of Labor & Industries,* 20 Wn. (2d) 429, 147 P. (2d) 522, wherein we stated:

"There is no evidence of even one objective symptom on which to base an opinion that, since respondent's claim was closed, his physical condition *had become aggravated* due to the injury for which he had already been compensated. Respondent's physician based his opinion as an expert upon subjective symptoms found, they being the things told him March 29, 1942, by respondent *while being examined by the physician for the purpose of testifying as an expert witness. The examination was not for the purpose of treatment.* Such things are none the less hearsay when they come from a physician than if from a layman. A physician may not base an opinion as to causation of a physical condition on subjective symptoms and self-serving statements." (Italics ours.)

The department states that the ruling last above referred to was affirmed in *Roellich v. Department of Labor & Industries,* 20 Wn. (2d) 674, 148 P. (2d) 957, and *Kralevich v. Department of Labor & Industries,* 23 Wn. (2d) 640, 161 P. (2d) 661. It is true that, in the *Roellich* case, *supra,* in referring to the testimony of the claimant's doctor, we quoted from *Cooper v. Department of Labor & Industries, supra,* which quotation was to the effect that claimant's doctor had seen the claimant only once, and that, *solely* on the basis of statements made to him by claimant respecting the pains he was undergoing, and that he was worse than when the claim was closed, the doctor gave as his opinion that claimant's condition had become aggravated since the claim was closed. We then stated in the *Roellich* case: "All that is said in the foregoing quotation applies in this case." It will be noted that, in the *Roellich* case, we stated:

"In this particular case, Dr. Rickards made his apparently customary single examination on April 17, 1941. Whatever may have been the fact as to the other seventy-nine cases, we are clear that *more than one examination* was necessary in order to give substantial testimony that the claim-

ant's disability was aggravated during the period involved."
(Italics ours.)

In the *Kralevich* case, *supra,* many of our prior cases are
cited and quoted from. We shall not discuss this case, other
than to quote from the opinion at p. 656:

"While appellant's [claimant's] testimony was that, after
the injury, the vision of her right eye was 'foggy,' and poorer
than prior to the accident, this testimony does not constitute
substantial evidence that the present condition of her eye
*was due to the accident.* That the presence for eighteen days
of a small foreign body under an eyelid, after the removal of
the body, would leave the vision of the eye permanently de-
creased, would be a matter concerning which experts, who
had examined the eye, would be the only persons who could
testify with scientific knowledge. 20 Am. Jur. 719 *et seq.*

"The rule is that *witnesses of ordinary mentality and ex-
perience, from observation and obvious facts of which they
have knowledge, may testify concerning the existence of a
physical condition, but the cause of such an affliction* as a
lessened vision would generally be, and certainly is in the
case at bar, a scientific question upon which the testimony
of expert medical witnesses is essential. *In this case, the
only expert testimony in the record negatives appellant's
claim that her lessened vision is due to the accident."*
(Italics ours.)

What we have said relative to the admissibility or pro-
bative value of a doctor's testimony should be considered in
the light of the specific question being considered, and the
opportunity the doctor had of determining the claimant's
condition; for it is apparent from the cases cited and others
that the emphatic language we have used relative to the
testimony of certain doctors was due, to a large extent, be-
cause such doctor had made but one examination of the
claimant, and then only for the purpose of testifying in the
case. It also appears that, in some of the aggravation cases,
the doctor had never examined the claimant until long after
the injury had occurred and the claim closed.

While we have recognized, and still do, that in many
instances the testimony of medical men in regard to a
claimed physical condition is and should be almost conclu-
sive, yet we have recognized that the testimony of non-

experts is admissible, as stated in the *Kralevich* case, *supra*. We have gone so far as to apply the same rule, in cases of this character tried to a jury, as is applied in the ordinary civil case, and, in view of the statute, we could not do otherwise. Relative to this matter, we stated, in *Otter v. Department of Labor & Industries,* 11 Wn. (2d) 51, 118 P. (2d) 413:

"Appellant [department] assigns error upon the refusal of the court to give an instruction requested by it as follows:

" 'You are instructed that while the testimony of non-expert witnesses has some bearing upon the question here involved, *yet the actual facts in this case* must be determined largely from the testimony of the medical witnesses.'

"This request was predicated on statements made in many of our cases to the effect that the 'actual facts must be determined from the testimony of the medical witnesses.' [Citing cases.] All the decisions in which such statements are found are cases in which the court was the 'trier of the facts.' [That statement is not technically true at this time.] They have no application to trials by jury, since the enactment of chapter 184, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488]), providing that, on appeal from an order of the joint board, the jury's verdict shall have the same force and effect as in actions at law. [Citing cases, all of which, of course, were prior to the *Cooper, Roellich,* and *Kralevich* cases, *supra.*]" (Italics ours.)

The opinion in the *Otter* case continues:

"The weight of the evidence and the credibility of witnesses is for the jury to determine under general instructions. *Murgatroyd v. Dudley,* 184 Wash. 222, 50 P. (2d) 1025. It is error for the court to single out any particular witness or class of witnesses and comment either favorably or unfavorably as to the weight or credibility to be accorded to their testimony. [Citing cases.] . . .

"By the same token, it would be error to charge the jury that the testimony of experts is entitled to greater weight than the testimony of other witnesses."

In the case of *Peterson v. Department of Labor & Industries,* 22 Wn. (2d) 647, 157 P. (2d) 298, the claimant had testified

" . . . that he was able to do light work and he had been for some nineteen weeks employed as a coppersmith helper at the Seattle-Tacoma Ship Building Plant and had

earned approximately fifty-four dollars per week. He said that he could not do work that required the lifting of heavy objects and that he had to rest frequently. He admitted that he suffered much pain in his head, back, legs, and in the abdominal region."

Four doctors testified in the cited case, and the opinion states that their testimony differed in its material aspects. The opinion further states:

"There was sufficient evidence to take the case to the jury. The members of that body listened to the reading of the evidence of the four doctors and decided that Dr. Tiffin's conclusion was the proper one and, in so doing, were entirely justified, because Dr. Tiffin *had cared for respondent at and after the time of the accident,* while the other doctors had only the benefit of an examination made long after the injury." (Italics ours.)

Again, in *Roellich v. Department of Labor & Industries, supra,* we stated:

"As to the appellant's [department's] contention that there is no substantial evidence to that effect [that Roellich's disability was aggravated after March 22, 1940, and before June 11, 1941, as a proximate result of the injury of December 27, 1939], the respondent's brief devotes less than a page. A broad, general question is quoted, to which her medical witness made a broad, general answer, and the matter is dismissed with this sentence:

" 'Since the enactment of the jury bill, giving jury verdicts the same force and effect in compensation cases as they have in other civil cases, a verdict must stand *if there is any substantial evidence to support it.'*

"We have repeatedly recognized and followed that rule. *Husa v. Department of Labor & Industries* . . . [20 Wn. (2d) 114], 146 P. (2d) 191. We have also repeatedly recognized that the jury is the exclusive judge of the credibility of the witnesses. *Dupea v. Seattle* . . . [20 Wn. (2d) 285], 147 P. (2d) 272. Nor can we set a verdict aside because we think it is not in accordance with substantial justice. Only the trial court can do that. *Bond v. Ovens* . . . [20 Wn. (2d) 354], 147 P. (2d) 514. It follows that, in a jury case, *the testimony of a single witness may,* if the jury believe him, determine the result, although any number of witnesses may have testified to the contrary." (Italics ours.)

While statements may be found in some of the cases decided subsequent to the enactment of Rem. Rev. Stat. (Sup.), § 7697-2 [P.P.C. § 704-3], referred to in the quotation from the *Otter* case, *supra,* which might seem to conflict with statements made in the *Otter* and *Roellich* cases, our study of the cases convinces us that the rules announced in the cases last referred to, relative to the consideration to be given to expert and nonexpert witnesses in cases of this character, are the proper rules to be followed.

Let us now see what question was actually submitted to the jury in the instant case. As has been customary in cases of this character, interrogatories were submitted to the jury. These interrogatories, together with the answers by the jury, have been hereinabove set out. It will be noticed that the jury concluded that claimant had suffered a permanent partial disability greater than that for which he had already been allowed compensation. It will also be noticed that the jury concluded that claimant had suffered a disability to the extent of one hundred per cent of twenty-four hundred dollars.

No exception was taken to the form of the interrogatories, nor to any of the instructions given by the court, and they became the law of the case.

It is admitted that respondent was injured while engaged in work which is classed as extrahazardous, and it is admitted that he received an injury to his lower back. The department recognized these facts, as did all the doctors. The question now before us is whether or not there was sufficient evidence to go to the jury, and sufficient evidence to sustain the jury's verdict that respondent had, in fact, suffered a permanent partial disability greater than twenty-five per cent of the unspecified.

It will be recalled that claimant was injured March 3, 1942. The order of the joint board was made on April 30, 1945. Dr. Kenneth Partlow examined claimant once on February 3, 1944. Dr. W. E. Steele, together with Dr. Wyckoff, examined him on June 25, 1943, at the request of the department. We have heretofore set out the conclusion of the three doctors last above named.

Respondent, in his brief, refers to the case of *Anderson v. Department of Labor & Industries,* 23 Wn. (2d) 76, 159 P. (2d) 397, where, after referring to the *Cooper* and *Roellich* cases, *supra,* we stated:

"The substance of these decisions is that the opinion of a physician, based *wholly* upon statements made by a workman, disclosing subjective symptoms only, is insufficient to take the *issue of aggravation* of disability to the jury. . . .

"Obviously, the physician's opinion was not based *wholly* upon subjective symptoms." (Italics ours.)

Respondent then argues that it is a natural inference that, in the *Anderson* case, this court limited the application of the rule announced in the *Cooper* and *Roellich* cases to those in which the opinion of the expert was based *wholly* upon subjective symptoms related by the claimant in *aggravation* cases.

This court has often said, as have many others, that statements made in an opinion must be considered in connection with the question or questions under consideration, and so considering the *Cooper* and *Roellich* cases, there is merit to respondent's contention. However, it is respondent's contention that Dr. LeCompte's conclusions were not based *wholly* upon subjective symptoms, and that, in addition to the doctor's testimony, there was other substantial evidence showing what respondent could do, and did do, prior to his injury, and what he was able to do, and did do, subsequent to the injury. This additional testimony was given by respondent, his wife, a brother, and a neighbor, and was received without objection.

Dr. A. C. Linkletter was the first attending physician. He cared for and administered to respondent during the time respondent was in the hospital, and for some weeks thereafter. Dr. Linkletter was in the service at the time of the hearing before the joint board and did not testify.

Dr. LeCompte succeeded Dr. Linkletter as the attending physician and continued as such physician for a period of more than eighteen months. He first examined respondent on September 10, 1942, at which time, according to the doctor's statement, the patient was wearing a brace. The

doctor was asked specifically if he examined respondent and answered that he did. He stated that, at the time of his first examination, respondent's condition was largely symptomatic, based on the previous history and the patient's complaints that his back tired very easily and he had pain when he exerted himself. The doctor stated that he was unable to make any physical findings. He further stated that he had seen respondent several times since September 10, 1942; that in December, 1942, respondent stated there was no pain, but that his back still tired easily.

Respondent's condition remained the same during January, 1943. The doctor stated that respondent told him that about March 27, 1943, he re-strained his back while carrying a milk can from the barn. The doctor was asked if, in his opinion, respondent's condition was fixed at this time, and whether or not any treatment was indicated, to which he replied that there had been relatively little change, from the standpoint of history, from the first time he saw him, and that he knew of no treatment which would be of benefit to respondent.

"Q. When you first started treating him you were naturally going on the assumption of his complaints, plus the first examination by Dr. Linkletter. A. And the x-ray reports. Q. Do you think, Doctor, that he is now able to follow a gainful occupation? A. From the history that he gives I would say no, although I haven't been able to find anything definite at all. But after all it is a condition in which you have to accept the man's history. Q. You were relying on the history, his symptoms, and complaints described to you and how he feels? A. And what he has been able to do and what he has done when he has gotten into trouble."

On redirect examination, the doctor stated:

"Q. Your opinion was based too on your experience and your examination and your ability as a physician and surgeon? . . . A. Naturally. In medicine you have to accept the history given by the patient. Q. This is your opinion as a doctor? A. That's right."

The doctor was asked whether or not his opinion was based on speculation and conjecture, to which he replied that he did not know what the patient had done, other than

what respondent told him; that he did not see the patient between his visits; and that he had to rely on what respondent told him.

On recross-examination, the doctor testified:

"Q. Did you review the x-ray report on this? A. Yes. Q. Did it show any congenital anomalies in the region of the lumbo-sacrum? A. Yes. Q. Congenital anomalies is something he is born with? A. Yes. An abnormality of birth. Q. And not the result of any trauma? A. That's right. Q. With that x-ray report would it be a fact that a person with that condition would have a potentially weak back? A. Not necessarily. They can have anomalies without necessarily displaying weakness. Q. But very often that is true? A. Yes, it is true. . . . Q. You were unable to make any other possible finding? A. No. You have to estimate the soft tissue damage. I didn't see him in the beginning so I can't say what was present at the first injury, how much soft tissue damage was done and how much bruising. Q. You can't say as to what extent his condition may have improved from the period of the original injury? A. That's right. Up till the time I saw him. Q. All the time you have seen the man his condition has remained stationary? A. Yes. Q. He had the same complaints? A. Yes, aggravated at the time he slipped while carrying the milk. It was aggravated slightly at that time. He complained of greater pain."

Respondent testified that Dr. LeCompte had him go through a lot of bending exercises, and so forth.

It is true that Dr. LeCompte stated that he assumed what respondent told him relative to the pain he suffered and what he could and could not do was true, and, in several instances, the doctor stated that his opinion was based upon what respondent told him. We appreciate that, if the jury were compelled to accept that statement as conclusive, there would be much merit to appellant's contention that Dr. LeCompte's opinion was based entirely upon what respondent told him. However, in view of the record, we do not think the jury were concluded by the above statement, and we shall later in this opinion state our reasons for such conclusion.

It should be kept in mind that Dr. Partlow examined respondent once on February 3, 1944, and that Drs. Steele and

Wyckoff examined him June 25, 1943. All of these doctors testified as to the history of the case, as related to them by respondent. We desire to quote from Dr. Steele's testimony:

"Q. After this physical examination and study of the x-rays, what was your opinion about the man, Doctor? A. Well, we felt that he was able to do many types of work, but was probably hindered to a certain extent in the low back area. He had had—the x-rays showed an anomaly which we felt was aggravated by this injury; but, as I say, he was able to do many types of work; and we recommended that his case be closed, as he was working at that time, and that he be given a permanent partial disability of 25% as compared with the maximum for the unspecified injury."

It is admitted by the department, and assumed by all the doctors, that respondent received an injury to his lower back on the date hereinbefore stated, and that, as the proximate result of such injury, respondent was permanently partially disabled.

It is apparent to us that none of these doctors, at the time they examined respondent, found what might be termed objective symptoms, and yet they all felt that he had a permanent partial disability as the result of the injury. So it seems to us that all of them, because of the location of the injury and the complaints of respondent, must have relied to a great extent on the history of the case, as related by respondent, and his subjective symptoms.

Medical Trial Technique, by Goldstein and Shabat, at p. 176, has the following to say in regard to injuries to the lower back:

"Injuries and diseases of the back, particularly of the lower back, present disturbing problems to both doctors and lawyers because (a) it is often difficult to distinguish legitimate claims from fraudulent, (b) some x-rays give little aid in diagnosing certain types of back injuries, (c) in making a diagnosis it is often necessary to rely almost wholly upon the history and the sometimes unreliable recital by the patient of his subjective symptoms."

■■ While we do not desire to be understood as laying down any hard and fast rule, it is our opinion that an attending physician, assuming of course that he shows himself

to be qualified, who has attended a patient for a considerable period of time for the purpose of treatment, and who has treated the patient, is better qualified to give an opinion as to the patient's disability than a doctor who has seen and examined the patient once.

We are of the opinion the jury in this case had a right to infer, from the testimony of Dr. LeCompte and that of respondent, that the doctor had information upon which his opinion was based other than what respondent told him. There is positive testimony that Dr. LeCompte made respondent go through bending exercises; that the doctor had the report of Dr. Linkletter, who had first cared for the patient; that Dr. LeCompte examined X-ray reports, from which he found that respondent had an anomaly; and that all of these things, together with the history and complaints related to him by respondent, were in fact the basis of the doctor's opinion.

While we appreciate that the extent of the examination and the length of time the patient was under the care of his attending physician should be considered, we have, in several cases, emphasized the fact that special consideration should be given to the opinion of the attending physician. See *Smith v. Department of Labor & Industries,* 180 Wash. 84, 38 P. (2d) 1016; *Kearney v. Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. (2d) 903; *Peterson v. Department of Labor & Industries, supra;* and *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries,* 26 Wn. (2d) 233, 173 P. (2d) 786.

■ Appellant naturally places much stress on a statement made by Dr. LeCompte that his opinion was based upon what respondent told him, and argues that the only basis for the doctor's opinion was the subjective symptoms related to him by respondent.

We are of the opinion the jury were not concluded by the doctor's statement, where the record shows that the doctor did in fact have other information relative to the respondent's condition before him.

In this connection we call attention to the case of *Hastings*

*v. Department of Labor & Industries,* 24 Wn. (2d) 1, 163 P. (2d) 142:

"It is conceded by the respondent in this case that the department and the appellant herein produced evidence through medical testimony which would support the action taken by the joint board. We may also concede that such evidence was sufficient to support a verdict by the jury in favor of the appellant, had the jury so found. The question here, however, is whether the evidence produced by the respondent was competent and sufficient to take the case to the jury and to support its verdict in his favor. The answer to that question depends entirely upon the competency and probative effect of the testimony of Dr. Joseph Segal, called as a witness for the respondent."

Then follow quotations from the doctor's testimony. The opinion continues:

"From this testimony, several things are apparent. First, the doctor obtained from the respondent a history of the injury and a recitation of his complaints of suffering. This was the normal and proper course of procedure. He then examined the patient with reference to those complaints, took an X-ray photograph of the injured member [in the instant case Dr. LeCompte examined X-ray reports], and learned therefrom that the anatomical structures of the arm had been changed over a period of several years since the accident."

(In the instant case, Dr. LeCompte examined the X-ray reports and, from them, determined at least what the X rays showed to be the condition of respondent's lower spine, and was questioned as to whether or not a man with the condition therein shown to exist would have a potentially weak back.)

The opinion further states:

"Appellant contends that this case falls within the rule laid down in *Cooper v. Department of Labor & Industries,* 20 Wn. (2d) 429, 147 P. (2d) 522, and *Roellich v. Department of Labor & Industries,* 20 Wn. (2d) 674, 148 P. (2d) 957. That contention is based wholly, and emphatically, upon that portion of the doctor's testimony wherein he was asked to give an opinion as to whether there had been an aggravation and, in answer thereto, stated: 'I am simply

taking the patient's word for it. I have no reason to doubt his word.' "

The question under consideration in the cited case was whether the claim should be reopened on account of alleged aggravation, so it seems to us that it could be as logically argued in the cited case that Dr. Segal's opinion, as to whether there was aggravation, was based entirely upon what the respondent in that case told him as it could be claimed in the instant case that Dr. LeCompte's opinion was based entirely on what respondent told him. We continue to quote from the opinion in the *Hastings* case:

"It is apparent to us, and we believe the jury clearly understood, that what the doctor meant by that particular statement was that he accepted as true the respondent's recitation of his physical complaints. It is true that those complaints in themselves constituted merely subjective symptoms; but the doctor was entitled and required to consider them in making his examination."

The opinion then distinguishes the *Cooper* case, *supra*, and states:

"In the case at bar, the physician did not rely solely on the statements of the respondent respecting his pains, but made a physical examination and took an X-ray picture, from which he found a condition logically explanatory of the cause of respondent's increased suffering and disability."

The opinion further states:

"In our opinion, the testimony of Dr. Segal was competent and constituted sufficient evidence to take the case to the jury."

We do not pretend to say that the physical examination made by Dr. LeCompte, as shown by the record, went as far or was as complete as that made by Dr. Segal in the last-cited case, but, when all the testimony is considered, we are of the opinion Dr. LeCompte was competent to express an opinion as to respondent's disability resulting from the injury.

We have been cited to no case where the medical testimony is like that in the instant case, that is, where an injury and some resulting disability are admitted by the de-

partment and testified to by all the doctors, notwithstanding the fact that, at the time of the respective examinations, they could find no objective symptoms indicating that the complaints of respondent and his condition were the result of the injury. There can be no doubt there was direct evidence by nonexperts, as will hereinafter appear, that respondent has been unable to do many things since the injury which he was able to do, and did do, before.

We stated in *Hyman v. Department of Labor & Industries,* 27 Wn. (2d) 301, 178 P. (2d) 347:

"Although a considerable part of the testimony is subjective, there is substantial medical testimony that is objective, and there is either direct evidence, or a reasonable inference from the evidence, that the plaintiff suffered a permanent partial disability other than the loss of sight of the left eye."

Respondent testified that, after the accident, he was taken to the hospital at Shelton, where he remained for three days and nights under the care of Dr. Linkletter; that, after his discharge from the hospital, he had to go back twice a week for about four weeks to have blood drawn from a blister which had formed; and that he then had to go back once a week for some weeks to have this blister drained.

Respondent lives on a small farm which belongs to his father. He has worked in the woods and done other work to supplement the income from the farm. He tried to work in the woods after his injury but was unable to do the type of work required of him. He had never had any trouble with his back before the injury and had never had any serious illness.

Respondent does not contend that he is entirely disabled, and his testimony shows that he can and does do light work around the farm. He helps with the milking, he drives the tractor some, and he assists in a small way with the other farm work, but he cannot do anything which requires lifting, and he cannot pitch hay or do other farm work of that character. When he attempts to do any heavy work, his back hurts him so that he has to stop. Respondent's brother, who lives on a nearby farm, helps him and does most of the

heavy work. Respondent could not see that there was much change in his condition since he had been examined by the doctors.

Mrs. Spalding testified that she never knew of respondent having a back injury, or of complaining of his back, prior to the injury herein referred to; that, since her husband's injury, she has had to do a great deal more of the farm work than she did before; that her husband is not able to do lifting, and that he complains of his back a great deal; that Dr. LeCompte gave her some liniment which she rubbed on his back, but it did not seem to help him; that she has seen no difference in his condition since the injury.

On cross-examination, Mrs. Spalding was asked:

"Q. He does do a lot of work around the place? A. He does not. Q. Do you do it all? A. An awful lot of it."

She further stated that her husband did what he could, but not a lot of it; that her husband tried to help and did what he could.

A Mr. Allen was called by respondent. This witness stated that he had never heard respondent mention his health prior to his injury; that, during the past month, respondent needed a root house built, and that the witness went to do the work; that respondent stated to him he was in bad shape and unable to go ahead with the work himself, to lift the ties; that respondent did not help him with the work.

Alvin Spalding, a brother of respondent, was called and testified. This witness lives about three miles from respondent on a farm of his own.

"Q. Do you visit your brother frequently? A. I am in farm work, and practically, there every day . . . Q. Before this injury . . . what sort of a workman was he? A. Well, he always done his part. Worked right with him. Q. Did he ever have difficulty with his back before this injury? A. No, never did. Q. You had worked right with him? A. All the time, yes. Q. Now, you see him frequently, at the present time? A. Yes. Q. Ever since his injury? A. Yes. Q. Do you assist him with his work on the farm? A. Yes, I do. Q. Describe to us how he gets along on the farm with his work. A. Well, he does his chores, but in farm work, he don't do very much of it. Q. By the 'chores' what

do you mean? A. Well, like cleaning the barn, feeding the cows. His wife helps a lot with that. Q. How about getting in the hay this fall, did you help on that? A. Yes, I did. Q. Did he do much work in that connection? A. No, he didn't. He was out there driving, helping a little, but he never did any hard work. Q. Did he a year ago this fall, fall of 1942, that was after his injury I think. A. No, he didn't. Q. Before his injury, did he—how did he do his work on the farm? A. We always worked together. He always done as much as I did."

In the case of *Champagne v. Department of Labor & Industries,* 22 Wn. (2d) 412, 156 P. (2d) 422, headnote No. 6, which is borne out by the opinion, states:

"On appeal by the claimant from a decision of the department fixing the degree of permanent partial disability sustained by him, the only question to be submitted to the jury is the degree of disability; and the verdict of the jury fixing the degree of disability fixes the award to be made to the claimant."

In considering the facts in this case, we should keep in mind that there is no question of aggravation, nor is there any question but what the injury was the direct cause of some disability.

■ Appellant, on p. 18 of its brief, states that respondent did not attempt to rate his own disability. We cannot believe that the law contemplates that a nonexpert witness should be required to rate his disability in terms of percentage, when medical experts are not required to couch their opinions in the language of the statute.

In *Ziniewicz v. Department of Labor & Industries,* 23 Wn. (2d) 436, 161 P. (2d) 315, we held that the testimony of Drs. Fitz and Ling was admissible, notwithstanding the fact that their language was not the language of the statute. In the cited case, we stated:

"It would not, we stated in *Gavin v. Everton,* 19 Wn. (2d) 785, 144 P. (2d) 735, be a salutary rule to require a witness to couch his testimony in the phraseology of our opinions. Nor would it be a salutary rule to require witnesses to use the language of the statute."

In the cited case, several nonexpert witnesses testified. In regard to the testimony of the nonexpert, we stated:

"Respondent's testimony relative to the accident was quite extensive. He testified he had pain in his back and on up to the left leg; that at times his leg gave way without warning; that he could not make full use of the toes on his injured foot; that he returned to work but was unable to perform the duties demanded of him, and later he worked as a crane operator at another mill, after working temporarily as a lumber piler.

"Two other witnesses testified that they were acquainted with respondent, and that he limped and does not now get around like a normal person."

We again stated that the question presented as to the extent of the injury was one of fact.

■ We are of the opinion that the testimony of the nonexpert witnesses in the case at bar was competent, as well as that of Dr. LeCompte, and that when we consider the questions presented to them, there was, in our opinion, substantial testimony introduced by respondent sufficient to take the case to the jury, and sufficient to support the verdict.

May we say in conclusion that we desire to have it clearly understood that we have not intended, by any statements made herein, to impliedly overrule or modify any of our prior decisions; nor do we think it necessary so to do in order to reach the conclusions herein arrived at.

We are of the opinion the court did not err in refusing appellant's motion to withdraw the case from the jury and to dismiss the appeal to the superior court, nor in denying appellant's motion for judgment n.o.v.

■ There are some assignments stated, but not argued by appellant, and we assume they have been waived.

We have examined and considered the brief of the employer, Simpson Logging Company, filed in this case.

The judgment of the trial court is affirmed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.