## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| NEIL R. BECK, | No.  49246-6-II |
| Appellant, | |
| v. | |
| GLACIER NORTHWEST INC., | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Neil Beck appeals from a jury verdict affirming the closure of his industrial insurance claim.  He argues that the trial court erred in instructing the jury that special consideration should be given to the testimony of an attending physician.  Because any potential error was harmless, we affirm.

### FACTS

In 2005, Beck worked as a concrete mixer truck driver for Glacier Northwest, Inc.  In May 2005, Beck's coworker grabbed him in a bear hug and twisted him while Beck was seated.  The injury caused a thoracic strain in Beck's back.  Beck filed a workers' compensation claim with Glacier Northwest, a self-insured employer.  The claim closed in April 2007 with an award for permanent partial disability.

In June 2009, Beck filed an application to reopen his claim.  He contended that his condition had worsened to the point of total disability and required further treatment.  The Board of Industrial Insurance Appeals ultimately reopened Beck's claim for further authorized treatment.  In March 2013, Beck's claim was again closed after a determination that Beck had

reached maximum medical improvement, no further treatment was necessary, and he was not totally disabled.

Beck appealed to the Board. The Board considered evidence and testimony of Beck and his wife, Dr. Gritzka, Dr. Bald, Dr. Harris, and Dr. Earle, in addition to viewing a surveillance video showing Beck engaged in home reconstruction projects.

Dr. Gritzka is an orthopedic surgeon who saw Beck three times at the request of Beck's counsel.[1] When asked if Beck had reached maximum medical improvement, Dr. Gritzka testified that "if we had a more specific exact diagnosis, then our treatment could be directed towards something other than covering up the pain." Clerk's Papers (CP) at 131. He recommended X-rays of Beck's thoracic spine, a physical capacities evaluation, and a psychiatric evaluation. While Dr. Gritzka testified that Beck was not capable of returning to his past work as a concrete driver from June 2009 through April 2011 and December 2012 through May 2013, he could not say whether Beck was unable to perform any continuous gainful employment during those periods of time.

Drs. Bald, Harris, and Earle all testified that Beck's conditions were fixed and stable and in need of no further treatment. Dr. Bald is an orthopedic surgeon who performed an independent medical examination of Beck at Glacier Northwest's request in October 2009. At that time, Dr. Bald recommended that Beck perform additional self-directed exercise to remain fit, but recommended no further formal treatment. Dr. Bald opined that in 2009 through 2013

_____

[1] Dr. Gritzka saw Beck in October 2006, December 2009, and February 2014.

2

Beck had no physical capacity restrictions and noted that during all relevant periods on appeal, Beck was fully capable of sustained gainful employment.

Dr. Harris is an orthopedic surgeon who examined Beck at Glacier Northwest's request in November 2012 and did not identify any anatomic injury to Beck's cervical, thoracic, or lumbar spine. Dr. Harris diagnosed Beck with degenerative disc disease and found Beck's condition fixed and stable because Beck had several years of nonoperative treatment, was not a surgical candidate, and there was no additional treatment that could be considered curative.

Dr. Earle was Beck's attending physician for a short period and saw Beck on three occasions in 2012. Dr. Earle's treatment plan was to strengthen Beck's back, taper him off narcotics, and get him back to work. Dr. Earle ordered a bone scan of Beck's back which showed normal results. At Beck's third appointment with Dr. Earle, Beck brought up a new laser surgery being performed in Texas which he had learned about on the Internet. Dr. Earle explained that the surgery was neither mainstream nor approved by the Department of Labor and Industries, and he discouraged Beck from pursuing it. Beck became hostile with Dr. Earle for not agreeing to the surgery, and as a result, Dr. Earle discharged Beck from his care. Dr. Earle ultimately concluded that there was no reasonable and necessary treatment that would help Beck. After viewing surveillance footage showing Beck doing extensive home renovation work without any signs of pain, Dr. Earle concluded that Beck was capable of at least medium-level work.

Glacier Northwest introduced video evidence from a private investigator who had filmed Beck on three different dates between June 2012 and September 2012.[2] The Board stated that the videos showed Beck engaged in home reconstruction projects such as building a deck. In the videos, Beck appeared capable of normal function and physical activity, including repetitive motion and repetitive lifting of heavy objects. He also appeared capable of normal activities consistent with employment, such as lifting boards overhead, operating industrial equipment, and using hand tools. The Board found that the videos showed Beck moving easily and smoothly without any apparent significant pain or any obvious deficits of motion or strength.

The Board concluded that (1) Beck did not require further proper and necessary treatment for any condition proximately caused by his industrial injury, (2) Beck was not temporarily totally disabled because of his industrial injury, and (3) no condition proximately related to Beck's industrial injury permanently worsened or became aggravated during the relevant time period.

Beck then appealed to superior court. Over Beck's objection, the trial court gave the following instruction to the jury:

> You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve such testimony. It does require that you give any such testimony careful thought in your deliberations.

CP at 819. The jury affirmed the Board's order and decision.

---

[2] These videos are not included in the record on appeal. This summary of their contents is based on the Board's order.

ANALYSIS

Beck argues that the trial court erred by instructing the jury that special consideration be given to an attending physician's testimony, because Beck is able to give articulable reasons for not accepting the physician's testimony. He further argues that giving the instruction was not harmless because Glacier Northwest referred to it in its closing argument as part of its strategy to distinguish Dr. Earle's testimony from Dr. Gritzka's. We assume without deciding that the instruction was erroneously given, but hold that any instructional error was harmless.

I. SPECIAL CONSIDERATION INSTRUCTION

In *Clark County v. McManus*, 185 Wn.2d 466, 476, 372 P.3d 764 (2016), our Supreme Court held that the instruction that special consideration should be given to the opinion testimony of an attending physician in workers' compensation cases is mandatory. Washington courts consider the instruction reasonable because an attending physician is not an expert hired to give a particular opinion consistent with one party's view of the case. *See Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 129, 913 P.2d 402 (1996); *Intalco Aluminum v. Dep't of Labor & Indus.*, 66 Wn. App. 644, 654, 833 P.2d 390 (1992).

Appellate courts recognize that an attending physician who has cared for and treated a patient over a period of time is better qualified to give an opinion as to the patient's condition than a doctor who has seen and examined the patient once. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 6, 977 P.2d 570 (1999). Even where a special consideration testimony is given, the weight and credibility given to an attending physician's testimony remains up to the jury. *See McManus*, 185 Wn.2d at 472 (noting that the special consideration instruction does not require the jury to give more weight or credibility to the attending physician's testimony, but only to

give it careful thought). The primary reason behind the special consideration instruction is that an attending physician is not a paid expert, but rather an unbiased expert who is "'better qualified to give an opinion as to the patient's disability.'" *Ruse*, 138 Wn.2d at 6 (quoting *Spalding v. Dep't of Labor & Indus.*, 29 Wn.2d 115, 129, 186 P.2d 76 (1947)).

## II. ANY ERROR WAS HARMLESS

Beck contends that giving the special consideration instruction was not harmless because Glacier Northwest referred to it in its closing argument as part of its strategy to distinguish Dr. Earle's testimony from Dr. Gritzka's. We disagree.

To succeed on a claim that a jury instruction was erroneously given, Beck must show that the error was not harmless. *Blaney v. Int'l Ass'n of Machinists*, 151 Wn.2d 203, 211, 87 P.3d 757 (2004). "An erroneous instruction is harmless if it is 'not prejudicial to the substantial rights of the part[ies] . . . and in no way affected the final outcome of the case.'" *Blaney*, 151 Wn.2d at 211 (alterations in original) (quoting *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)).

Here, Beck contends that he was prejudiced by the special consideration instruction because Glacier Northwest referenced it in its closing argument as part of its strategy to distinguish Dr. Earle's testimony from Dr. Gritzka's testimony. However, the special consideration instruction clearly states, "Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve such testimony. It does require that you give any such testimony careful thought in your deliberations." CP at 819.

Additionally, Glacier Northwest's case did not hinge on Dr. Earle's testimony. Rather it focused on the lack of evidence supporting Beck's position and the abundance of evidence against it. The evidence included surveillance footage showing Beck doing extensive home

6

No. 49246-6-II

renovation work without any signs of pain, MRI (magnetic resonance imaging) results showing no disc protrusion, and the testimony of two additional doctors who testified in support of Glacier Northwest's position.

Given that the special consideration instruction did not require the jury to adopt or give more weight to Dr. Earle's testimony, and the abundance of other evidence cutting against Beck's position at trial, Beck cannot show that any error in issuing the special consideration instruction was prejudicial. Consequently, we hold that any error was harmless. We affirm.

ATTORNEY FEES

Beck argues that, should he prevail on this appeal and on retrial in superior court, he is entitled to attorney fees pursuant to RCW 51.32.130. However, because Beck does not prevail, we do not consider his request for fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.

7